EVANDER, J.
 

 Anthony Louzon was convicted, after a jury trial, of robbery with a weapon. Because of several improper comments made by the prosecutor during closing arguments, we are compelled to reverse.
 

 The alleged victim, Mark Stallings, testified at trial that the robbery occurred at approximately 1:00 a.m. in a hotel parking lot. Stallings stated that he was in his car awaiting the arrival of Stephen Browne. According to Stallings, Browne was to repay him a debt. When Browne entered the front passenger seat of Stallings’ car, another male entered the seat directly behind Stallings, pointed a gun at Stallings’ head, and demanded Stallings’ money. When Stallings responded that he did not have any money, the individual then grabbed Stallings’ necklace and, along with Browne, fled into a waiting vehicle. Stall-ings wrote down the license plate number of the vehicle and called 9-1-1.
 

 When subsequently interviewed by police, Browne and the driver of the awaiting vehicle (Chase Chandler) identified Louzon as the individual who had robbed Stallings. Browne and Chandler later entered pleas to the charges against them and, pursuant to their respective plea agreements, testified at Louzon’s trial. Browne generally confirmed Stallings’ version of the robbery, but added that he was meeting Stall-ings for the purpose of purchasing drugs. In addition to stealing the necklace, Browne stated that Louzon had also taken six Oxycodone pills during the robbery. Prior to trial, when presented with a photo array by the police, Stallings identified Louzon as the individual who had robbed him. However, at trial Stallings testified that when he selected Louzon’s photo from the photo array, he was only choosing the photo that looked the most similar to the man who had robbed him. He denied that Louzon was involved in the robbery.
 

 During closing arguments, the prosecutor made several comments implying that Stallings had been threatened by Louzon to change his testimony:
 

 We come to December 9, 2009, there’s an evidentiary hearing, well, actually before the evidentiary hearing the evidence is that Mr. Stallings, who at that time in December of '09 is locked up in the jailhouse. He’s locked up in the jailhouse, and he’s locked up in the jailhouse surrounded by other people in jail. Now, I asked him point blank, were you threatened when you were in jail, and he said no. But we know that all of a sudden he calls the defense attorney himself, Mr. Wagner, and he says, I’d like to recant my prior ID of Mr. Louzon. I don’t think I can identify him anymore. And he tells us it was a ping [sic] of conscious [sic]. I’m sitting here in jail, five months after the fact, and I just don’t feel right about it.
 

 After the trial court’s denial of Louzon’s objection and request for a mistrial, the prosecutor, over a continuing objection, continued this line of argument:
 

 Wouldn’t it strike you as kind of funny that if Mr. Stallings is genuinely having a ping [sic] of conscious [sic], I don’t feel right about my ID, does he call the head detective in the case? No. Does he call the head prosecutor? No. He calls the defense attorney. How does he get the
 
 *680
 
 defense attorney's phone number in jail? There is a clear inference that he got the phone number the same time he got the threat that he says he never got.
 

 So he’s totally watered down and retracted from his original ID. What I was talking about is I fully concede. When confronted about a threat, he said, no, I had never been threatened. Using your common sense, again, if he had been threatened and he really was scared, he’s not going to divulge the threat itself because that’s a violation — if you’re threatened and you’re not going to testify, you’re not going to tell anybody why you’re not going to testify because that defeats the purpose. He’s scared. Of course, he’s scared. He’s testifying against the man who put a gun to his head. He’s scared.
 

 While a prosecutor is certainly entitled to point out the discrepancies and changes in a witness’ testimony, it is impermissible to suggest, without evidentiary support, that a witness has changed his or her testimony due to contact with the defendant and/or defense counsel.
 
 See Pen-alver v. State,
 
 926 So.2d 1118, 1129 (Fla.2006);
 
 Tindal v. State,
 
 803 So.2d 806, 810 (Fla. 4th DCA 2001);
 
 Jones v. State,
 
 449 So.2d 313, 314-15 (Fla. 5th DCA 1984). The fact that a witness is impeached may imply that the witness is lying, but it does not imply that someone else has made the witness change his or her story.
 
 Herny v. State,
 
 651 So.2d 1267, 1268 (Fla. 4th DCA 1995). As explained in
 
 Tindal,
 
 because the prosecutor is an agent of the State, such comments suggest that the prosecutor has unique knowledge that has not been presented to the jury. 803 So.2d at 810. Additionally, such comments are highly prejudicial because they imply that the defendant engaged in the separate criminal offenses of witness tampering and suborning perjury.
 
 Id.
 

 In the instant case, without supporting evidence, the prosecutor suggested to the jury that it could infer that Stallings had been threatened and that such threat was made by or on behalf of Louzon. These comments were improper, prejudicial, and should not have been permitted by the trial court.
 
 See Penalver, Tindal; Henry; Jones.
 

 Although unnecessary to our disposition of this appeal, we will briefly address the sentencing issue raised by Louz-on in the event that Louzon is ultimately convicted of a robbery offense. Louzon claims he was ineligible to be sentenced as a prison releasee reoffender (PRR) under section 775.082(9)(a) because the record failed to reflect that he had ever been physically in the custody of the Department of Corrections. Section 775.082(9)(a) defines a “prison releasee reoffender” as a person who commits an enumerated offense within three years after being “released from a state correctional facility operated by the Department of Corrections .... ” In the instant case, the record reflects that although Louzon was sentenced to prison in May 2009 on a prior felony offense, he was not physically transferred to the Department of Corrections. Louzon had 609 days credit for jail time served and, thus, his sentence was found to have been fully served. Louzon argues that in order to qualify for PRR sentencing under section 775.082(9)(a), he must have been physically present at, and then released from, a Department of Corrections facility. We reject this argument. When Louzon was sentenced to imprisonment in May 2009, he was placed in the legal custody of the Department of Corrections. Because of the jail time credit, he was released by the Department of Corrections from its legal custody. As we
 
 *681
 
 stated in
 
 Cassista v. State,
 
 57 So.3d 265, 267 n. 1 (Fla. 5th DCA 2011), “If [an] offender’s state prison sentence expires while he or she is temporarily residing in a hospital or county jail, we would have no difficulty in concluding that the offender was constructively in a state prison facility when his sentence expired for PRR purposes.”
 

 To accept Louzon’s argument would place form over substance and would be inconsistent with the Legislature’s clear intent to provide for a greater sentence for individuals who commit a qualifying offense within three years of completion of a previously imposed prison sentence. To accept Louzon’s argument would also mean that in order for the State to ensure that a defendant in Louzon’s situation was eligible for subsequent PRR sentencing, it would have to physically transfer an individual from jail to a Department of Corrections facility — where the individual would then be entitled to an immediate release. Courts should not construe a statute so as to achieve an absurd result.
 
 See Kasischke v. State,
 
 991 So.2d 803, 818 (Fla.2008);
 
 Childers v. Cape Canaveral Hosp, Inc.,
 
 898 So.2d 973, 975 (Fla. 5th DCA 2005).
 

 REVERSED and REMANDED for new trial.
 

 ORFINGER, C.J. and MONACO, J., concur.