IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA,

     Appellant,

v.

RAY MON WRIGHT,

     Appellee.

and

RAY MON HENRY WRIGHT,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-3003

CASE NO. 1D14-3197

Opinion filed October 12, 2015.

An appeal from the Circuit Court for Duval County.
J. Bradford Stetson, Judge.

Pamela Jo Bondi, Attorney General, and Angela R. Hensel, Assistant Attorney General, Tallahassee, for State of Florida.

Nancy A. Daniels, Public Defender, and Kevin Steiger, Assistant Public Defender, Apalachicola, for Ray Mon Wright.

LEWIS, J.

Appellant, Ray Mon Wright, appeals his convictions for aggravated assault and burglary of a dwelling in case number 1D14-3197, arguing that the trial court erred in denying his motion for judgment of acquittal on the burglary charge and in failing to revise the transferred intent jury instruction that was requested by the State. We reject Appellant's arguments, affirm Appellant's convictions without further discussion, and write only to address the State's argument in case number 1D14-3003, which we have treated as a cross-appeal to Appellant's appeal, that the trial court erred in not sentencing Appellant as a prison releasee reoffender ("PRR"). Finding merit in the State's argument, we reverse Appellant's sentences and remand for resentencing.

Appellant committed the offenses at issue on November 6, 2013. The State sought to have Appellant characterized as a PRR based on his June 13, 2013, release following his sentence for the offense of accessory after the fact. For that offense, Appellant had been sentenced to 454 days' imprisonment with credit for 454 days served in county jail. Pursuant to the judgment in that case, which was entered on June 12, 2013, Appellant was "committed to the custody of the Department of Corrections." The Department of Corrections' Inmate Release Information Detail explained that Appellant was released on June 13, 2013, and the Release Facility was listed as the "CENTRAL OFFICE." The trial court declined to sentence

2

Appellant as a PRR in this case, finding that because he was released from county jail, he did not qualify. Even though the trial court "believe[d] the legislature may have intended [section 775.082] to apply to terms longer than 365 days in the Duval County Jail," it concluded that because the county jail was not operated by the Department of Corrections, Appellant was not a PRR. This appeal and cross-appeal followed.

A PRR is defined as "[a]ny defendant who commits, or attempts to commit" certain enumerated offenses:

> within 3 years after being released from a state correctional facility operated by the Department of Corrections or a private vendor or within 3 years after being released from a correctional institution of another state, the District of Columbia, the United States, any possession or territory of the United States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.

§ 775.082(9)(a)1., Fla. Stat. (2013). This issue involves a question of statutory interpretation, which is reviewed de novo. Reeves v. State, 957 So. 2d 625, 629 (Fla. 2007). The polestar of statutory construction is legislative intent. W. Fla. Reg'l Med. Ctr., Inc. v. See, 79 So. 3d 1, 8 (Fla. 2012). To discern legislative intent, a court must look first to the plain and obvious meaning of the statute's text, which may be discerned from a dictionary. Id. at 9. If the language of the statute is clear and unambiguous and conveys a clear and definite meaning, a court must apply the unequivocal meaning and not resort to the rules of statutory construction. Id. If,

3

however, an ambiguity exists, a court should look to the rules of statutory construction to help interpret legislative intent, which includes the examination of a statute's legislative history and the purpose behind its enactment. Id.

In addressing this issue, we find persuasive the Fifth District's reasoning in Louzon v. State, 78 So. 3d 678, 679 (Fla. 5th DCA 2012). There, the Fifth District reversed the appellant's conviction for robbery with a weapon because of several improper comments made by the prosecutor during closing arguments. Id. at 679. In its opinion, the Fifth District set forth in part:

> Although unnecessary to our disposition of this appeal, we will briefly address the sentencing issue raised by Louzon in the event that Louzon is ultimately convicted of a robbery offense. Louzon claims he was ineligible to be sentenced as a prison releasee reoffender (PRR) under section 775.082(9)(a) because the record failed to reflect that he had ever been physically in the custody of the Department of Corrections. Section 775.082(9)(a) defines a "prison releasee reoffender" as a person who commits an enumerated offense within three years after being "released from a state correctional facility operated by the Department of Corrections...." In the instant case, the record reflects that although Louzon was sentenced to prison in May 2009 on a prior felony offense, he was not physically transferred to the Department of Corrections. Louzon had 609 days credit for jail time served and, thus, his sentence was found to have been fully served. Louzon argues that in order to qualify for PRR sentencing under section 775.082(9)(a), he must have been physically present at, and then released from, a Department of Corrections facility. We reject this argument. When Louzon was sentenced to imprisonment in May 2009, he was placed in the legal custody of the Department of Corrections. Because of the jail time credit, he was released by the Department of Corrections from its legal custody. . . .
>
> To accept Louzon's argument would place form over substance and would be inconsistent with the Legislature's clear intent to provide

4

for a greater sentence for individuals who commit a qualifying offense within three years of completion of a previously imposed prison sentence. To accept Louzon's argument would also mean that in order for the State to ensure that a defendant in Louzon's situation was eligible for subsequent PRR sentencing, it would have to physically transfer an individual from jail to a Department of Corrections facility—where the individual would then be entitled to an immediate release. Courts should not construe a statute so as to achieve an absurd result.

Id. at 680-81.

Subsequently, in Taylor v. State, 114 So. 3d 355, 355 (Fla. 4th DCA 2013), the Fourth District affirmed the appellant's PRR sentence based upon the reasoning in Louzon, which the Fourth District adopted. The Fourth District set forth in part:

Here, appellant qualified as a PRR, because he committed the present offense within three years after his release from a federal correctional facility. Appellant was still in federal custody, even though housed in a Palm Beach County jail in order to perform substantial assistance. His release from federal custody while housed at the county jail still constitutes constructive release from a federal correctional facility for purposes of section 775.082(9)(a)(1), Florida Statutes.

Id. at 356.

In this case, it is undisputed that Appellant's most recent release date for a previous offense was June 13, 2013, within three years of the commission of the offenses at issue. However, rather than physically being released from a state correctional facility operated by the Department of Corrections or a private vendor, Appellant was physically released from the county jail as a result of his sentence of time served. Following the reasoning in both Louzon and Taylor, we conclude,

5

based upon the facts presented, that Appellant's release from custody constituted a constructive release from the Department of Corrections and a state correctional facility for purposes of section 775.082(9)(a)1. Contrary to the dissent's reasoning, we decline to hold that Appellant, who committed a PRR-qualifying offense, who was committed to the Department's custody, and whose release facility was listed as the central office, could not be considered a PRR simply by virtue of the fact that he was sentenced to time served and physically walked out of a county jail. We see nothing in the PRR statute to indicate that the Legislature intended for a defendant in this situation to avoid PRR status in the future.

In support of his argument, Appellant cites Cassista v. State, 57 So. 3d 265 (Fla. 5th DCA 2011). There, the appellant appealed the summary denial of his postconviction relief motion, alleging that the trial court improperly sentenced him as a PRR because he had not been released from a state correctional facility within three years of the date that he committed the offenses at issue. Id. at 266. The Fifth District explained that the appellant was released from the Department of Corrections and began his probation but absconded. Id. Two years later, in October 2005, he was sentenced for violating his probation to thirty-eight months in the Department of Corrections with forty-two months' jail credit. Id. The appellant claimed that he was transported from the St. Lucie County Jail to the Department of Corrections but was turned away because no commitment order was sent with him.

Id. In November 2005, he was released from the county jail, and twenty-eight days later committed the offenses at issue. Id. The appellant argued that because he was effectively sentenced to time served in October 2005 and the Department of Corrections refused to accept him, he was last released from a state correctional facility in August 2003, more than three years prior to the offenses at issue. Id. at 267. After noting that the appellant contended that the word "release" in the PRR statute did not include being released from a temporary confinement that happened to be in a state prison, the Fifth District set forth, "[O]ffenders are sometimes only temporarily detained. Unless those detentions 'ripen' into reimprisonment, they are excluded from consideration for PRR purposes." Id. at 267. Given the incomplete record before it, the Fifth District could not determine when the appellant was released from a state correctional facility and, therefore, reversed the order denying the appellant's postconviction relief motion and remanded for further consideration. Id. at 267-68.

As the State argues, Appellant's reliance upon Cassista is misplaced. In this case, Appellant was not temporarily detained in the county jail. Instead, he was committed to the Department of Corrections and sentenced to time served. As the Fifth District in Cassista explained:

> On occasion, an offender's sentence expiration date might be relevant if for example, the offender, while committed to a state correctional facility, is temporarily transported to a hospital for treatment, or to a county jail to face unrelated charges. If that offender's state prison

7

sentence expires while he or she is temporarily residing in a hospital or county jail, we would have no difficulty in concluding that the offender was constructively in a state prison facility when his sentence expired for PRR purposes.

Id. at 267 n.1. Because Appellant's state prison sentence for the offense of accessory after the fact expired while he was in county jail by virtue of the fact that he was given credit for time served, the trial court erred in not sentencing him as a PRR in this case.

For these reasons, we affirm Appellant's convictions in case number 1D14-3197, but reverse his sentences in case number 1D14-3003 and remand for resentencing in accordance with our opinion.

AFFIRMED in part; REVERSED in part; and REMANDED for resentencing.

WINOKUR, J., CONCURS WITH OPINION; MAKAR, J., DISSENTS WITH OPINION.

WINOKUR, J., concurring.

I concur in the majority opinion that section 775.082(9) requires Appellant to be sentenced as a prison releasee reoffender. I note that the majority opinion does not rely upon the "absurdity doctrine" to support its ruling, and write separately to explain why this doctrine is unnecessary to reach the result.

Appellant was sentenced to 454 days of imprisonment. Section 775.082(1) requires such a sentence to be served in a state correctional facility. If not for Appellant's credit for time served, it would have been illegal to serve this sentence in county jail. It is for this reason that the Department of Corrections processed Appellant at the time of his sentence and indicated "Central Office" as his release facility. A reasonable interpretation of the phrase "release[] from a state correctional facility operated by the Department of Corrections" includes release from "Central Office" in the circumstances presented here. Such an interpretation is consistent with the structure of section 775.082(9).

Resort to the "absurdity doctrine" suggests that the plain meaning of the statute compels an unreasonable result in a particular case. See Maddox v. State, 923 So. 2d 442, 452-53 (Fla. 2006) (Cantero, J., dissenting) (noting that the absurdity doctrine provides an exception to plain meaning only to avoid "an absurd or patently unreasonable" result). This is not the case here. The State presents a textually permissible interpretation that prevents an anomalous consequence. Because the text

9

of section 775.082(9)(a)1. can, and should, be interpreted to include the circumstances presented here, I concur in the majority opinion.

MAKAR, J., dissenting.

It's hard to fault the trial judge, who read the statute at issue as requiring that Wright have committed the crime in this case within three years after being released from a state correctional facility operated by the Department of Corrections to enhance his sentence. After all, the statute is a model of clarity in defining a prison releasee reoffender (PRR) as "[a]ny defendant who commits, or attempts to commit" certain specified offenses:

> within 3 years *after being released from a state correctional facility operated by the Department of Corrections* or a private vendor or within 3 years after being released from a correctional institution of another state, the District of Columbia, the United States, any possession or territory of the United States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.

§ 775.082(9)(a)1., Fla. Stat. (2013) (emphasis added). Though his prior offense resulted in a sentence greater than one year, Wright spent no time in a "state correctional facility operated by the Department of Corrections" and was released from a county jail, which led to the trial judge ruling as he did.

Because the statute is so clearly written, it takes the absurdity doctrine to conform it to what the judiciary believes the Legislature actually intended. State v. Hackley, 95 So. 3d 92, 95 (Fla. 2012) ("In certain circumstances, the absurdity doctrine may be used to justify departures from the general rule that courts will apply a statute's plain language."); See Veronica M. Dougherty, Absurdity and the Limits

11

of Literalism: Defining the Absurd Result Principle in Statutory Interpretation, 44 Am. U. L. Rev. 127, 127-28 (1994) ("The absurd result principle in statutory interpretation provides an exception to the rule that a statute should be interpreted according to its plain meaning.").

One version of the absurdity doctrine, a strict approach, states that a "provision may be either disregarded or judicially corrected as an error (when the correction is textually simple) if failing to do so would result in a disposition that no reasonable person could approve." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 235-39 (Thompson/West 2012) (hereinafter Reading Law). This approach places two restrictions on the doctrine's application:

> 1) The absurdity must consist of a disposition that no reasonable person could intend. Something that "may seem odd . . . is not absurd." The oddity or anomaly of certain consequences may be a perfectly valid reason for choosing one textually permissible interpretation over another, but it is no basis for disregarding or changing the text. [. . .]

> 2) The absurdity must be reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error (e.g., *losing party* instead of *winning party*). The doctrine does not include substantive errors arising from a drafter's failure to appreciate the effect of certain provisions.

Id. at 237-38 (footnotes and citation omitted). Neither restriction is present here. First, though it may seem odd to require release from a DOC-operated state correctional facility, it is not necessarily absurd. A reasonable person could take the view that offenders released from DOC-operated state prisons are, on average,

guilty of more serious crimes such that offenders released from a county facility would not trigger PRR sentencing; or perhaps the Legislature erred on the side of caution, limiting PRR status to releases from state prisons to avoid potential misclassifications of prisoners released from county facilities. Even if these are anomalous views, they are not wholly unreasonable; in fact, they make some sense. As the trial judge characterized it, "that's the way the ball bounces."

Second, the statute has to be rewritten, not just ministerially tweaked, to make it apply to Wright. The statute places its focus on specific facilities themselves, limiting release to only state correctional facilities operated by the DOC (or private vendors) and correctional facilities outside of Florida. Those included exclude all others; that the Legislature excluded county facilities cautions against judicial expansion of the statute's scope. The exclusion of county jails makes a legislative patch easy: amend the statute to add "county jail facilities" to the list. Under this approach, courts need not resort to legal fictions, such as constructive possession, to achieve substantive changes due to "a drafter's failure to appreciate the effect of certain provisions." Id.; see generally Lon L. Fuller, Legal Fictions (1967) (noting that legal fictions, which by definition aren't true, have utility in judicial decision-making).

Another version of the absurdity doctrine gives leeway to the judiciary to engage in a substantive evaluation of a clearly written statute to effectuate what

seems most sensible. This view of absurdity is often linked with related statutory construction principles, such as avoiding harsh or unreasonable results. See, e.g., Thompson v. State, 695 So. 2d 691, 693 (Fla. 1997) (recognizing "the basic tenet of statutory construction that courts are constrained to avoid a construction that would result in unreasonable, harsh, or absurd consequences.") (citations omitted). Mixed together, a stew of judicial powers emerges, the exercise of which the stricter approach sees as a "slippery slope" that "can lead to judicial revision of public and private texts to make them (in the judges' view) more reasonable." Reading Law, supra, at 237. Indeed, our supreme court recently said the following in a PRR case:

> But the absurdity doctrine is not to be used as a freewheeling tool for courts to second-guess and supplant the policy judgments made by the Legislature. It has long been recognized that the absurdity doctrine "is to be applied to override the literal terms of a statute only under rare and exceptional circumstances."

Hackley, 95 So. 3d at 95 (citation omitted). Given this admonition, deploying the absurdity doctrine or its kin, should be used reservedly.

Turning back to this case, what the trial judge confronted was an unambiguous statute, one that the Fifth District in dicta deemed absurd, a view adopted by the Fourth District. In Louzon v. State, 78 So. 3d 678 (Fla. 5th DCA 2012), the Fifth District, although noting it was "unnecessary to our disposition of this appeal," addressed the statutory interpretation issue, concluding:

> To accept Louzon's argument would place form over substance and would be inconsistent with the Legislature's clear intent to provide for

14

a greater sentence for individuals who commit a qualifying offense within three years of completion of a previously imposed prison sentence.

Id. at 681. It deemed absurd that Louzon's sentence could be enhanced simply by "physically transfer[ring] an individual from jail to a Department of Corrections facility—where the individual would then be entitled to an immediate release." Id. The Fourth District adopted Louzon's reasoning, concluding that an offender inmate was released from a "federal correctional facility" because he "was still in federal custody, even though housed in a Palm Beach County jail in order to perform substantial assistance." Taylor v. State, 114 So. 3d 355, 355-56 (Fla. 4th DCA 2013). It concluded that "release from federal custody while housed at the county jail still constitutes *constructive release* from a federal correctional facility for purposes of section 775.082(9)(a)(1), Florida Statutes." Id. (footnote omitted) (emphasis added) (the italicized phrase appears nowhere else in Florida's jurisprudence).

Despite its misgivings, the trial court was required to follow the Fourth District's decision, which would extend to a "constructive release" of a state offender from a county jail under the application of the absurdity doctrine. Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992) ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts."). Our Court is free to reject the reasoning of Taylor and Louzon, but our panel adopts it. My discomfort is that the case for application of the absurdity doctrine is very weak because we have an

15

admittedly unambiguous statute, a plausible basis for the language used, an easy legislative fix if county jails are to be included, no judicial patch that corrects only a technical or ministerial error, and a principle of statutory construction that says "where criminal statutes are susceptible to differing constructions, they must be construed in favor of the accused." Thompson v. State, 695 So. 2d 691, 693 (Fla. 1997). The consequence of applying the statute as written is that a class of certain offenders held in non-state county jails, rather than DOC-operated state correctional facilities, are not subject to sentence enhancements unless they are transported to the specified facilities for release. It may be that transporting Wright from county jail so that he can be "released from a state correctional facility operated by the Department of Corrections" is inefficient, inconvenient, and a not particularly sensible way of ensuring that he falls within the confines of the statute as written; but it seems less than absurd, particularly when the overwhelming swath of offenders serving time in and being released from a "state correctional facility operated by the Department of Corrections" do qualify for enhanced sentencing and plausible bases for application of the literal text exists. Given the importance of the issue, and whether the absurdity doctrine applies, I would certify the following question for the supreme court's consideration:

> Whether release from a county jail subjects an offender to Prison Releasee Reoffender status under section 775.082(9)(a)1., which states that release must be "from a state correctional facility operated by the Department of Corrections . . . following incarceration for an offense for which the sentence

16

is punishable by more than 1 year in this state."