WINOKUR, J.
I concur in the majority opinion that section 775.082(9) requires Appellant to be sentenced as a prison releasee reoffender. I note that the majority opinion does not rely upon the “absurdity doctrine” to support its ruling, and write separately tp explain why this doctrine is unnecessary to reach the result.
. Appellant was sentenced to 454 days of imprisonment. Section 775.082(1) requires such a sentence to be served in a state correctional facility. If not for Appellant’s credit for- time served, it would have been illegal to serve this sentence in county jail. It is-for this reason that the Department of Corrections processed Appellant at the time of his sentence and indicated “Central Office” as his release facility. A reasonable interpretation of the phrase “release[] from a state correctional facility operated by the Department of Corrections’?'includes release from “Central Office” in the circumstances presented here. Such an interpretation is consistent- with the structure of section 775.082(9).
Resort to the “absurdity doctrine” suggests that the plain meaning of the statute compels an unreasonable result in -a particular case. See Maddox v. State, 923 So.2d 442, 452-53 (Fla.2006) (Cantero, J., dissenting) . (noting that the absurdity doctrine provides an exception to1 plain meaning only to avoid “an absurd or patently unreasonable”-result). This is not the case here. The State presents a textually per-missiblé interpretation that prevents an anomalous consequence. Because the text of section 775.082(9)(a)l. can, and should, be interpreted to include the circumstances presented here, I concur in the majority opinion.
MAKAR, J.
■It’s hard to fault the trial judge, who read the statute at issue as requiring that Wright have committed the crime in this case within three years after being released from a state correctional facility operated by the Department of Corrections to enhance his sentence. After all, the statute is a model of clarity in defining a prison releasee reoffender (PRR) as “[a]ny defendant who commits, or attempts to commit” certain specified offenses:
.within 3- years after being released from - a state correctional facility operated by the Department of Corrections or a private vendor or within 3 years after being released from a correctional institution of -another state, the District of Columbia, the United States, any possession or territory- of the United States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.
§ 775.082(9)(a)l., Fla. Stat. (2013) (emphasis added). Though his prior offense resulted in a sentence greater than one year, Wright spent -no time in a “state correctional facility operated by the Department of Corrections” and was released from a county jail, which led to the trial judge ruling as he did.
' Because the statute is so clearly written, it takes the absurdity doctrine to conform it to what the judiciary believes the Legislature actually intended. State v. Hackley, 95 So.3d 92, 95 (Fla.2012) (“In certain circumstances, the absurdity -doctrine may be used to justify departures from the general rule that courts will apply a statute’s plain language;”); See Veronica M. Dougherty, 'Absurdity and the Limits of Literalism: Defining the Absurd Result Princi- *1048 pie in Statutory Interpretation, 44 Am. U.L.Rev. 127, 127-28 (1994) (“The absurd result principle in statutory interpretation provides an exception to the rule that a statute should be interpreted according to its plain meaning.”).
One version of the absurdity doctrine, a strict approach, states that a “provision may be ⅝ either disregarded or judicially corrected as an error (when the correction is textually simple) if failing to do so would result in a disposition that no reasonable person could approve.” Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 235-39 (Thompson/West 2012) (hereinafter Reading Law). This approach places two restrictions on the doctrine’s application:
1) The absurdity must consist of a disposition that no reasonable person could intend. Something that “may seem odd ... is not absurd.” The oddity or anomaly of certain consequences may be a perfectly valid reason for choosing one textually permissible interpretation over another, but it is no basis for disregarding or changing the text.
[[Image here]]
2) The absurdity must be reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error (e.g., losing party instead of winning party). The doctrine does not include substantive errors arising from a drafter’s failure to appreciate the effect of certain provisions;
Id. at 237-38 (footnotes and citation omitted). Neither restriction is present here. First, though it may seem odd to require release from a DOC-operated state correctional facility, it is not necessarily absurd. A reasonable person could take the view that offenders released from DOC-operated state prisons are, on average, guilty of more serious crimes such that offenders released from a county facility would not trigger PRR sentencing; or perhaps the Legislature erred on the side of caution, limiting PRR status to releases from state prisons to avoid potential misclassifications of prisoners released from county facilities. Even if these are anomalous views, they are not wholly unreasonable; in fact, they make some sense. As the'trial judge characterized it, “that’s the way the ball bounces.”
Second, the statute has to be rewritten, not just ministerially tweaked, to make it apply to Wright. The statute places its focus on specific facilities themselves, limiting release to only state correctional facilities operated by the DOC (or private vendors) and correctional facilities outside of Florida. Those included exclude all others; that the Legislature excluded county facilities cautions against judicial expansion of the statute’s scope. The exclusion of county jails makes a legislative patch easy: amend the statute to add “county jail facilities” to the list. Under this approach, courts need not resort to legal fictions, such as constructive possession, to achieve substantive changes due to “a drafter’s failure to appreciate the effect of certain provisions.” Id.; see generally Lon L. Fuller, Legal Fictions (1967) (noting that legal fictions, which by definition aren’t true, have utility in judicial decision-making).
Another version of the absurdity doctrine gives leeway to the judiciary to engage in a substantive evaluation of a clearly written statute to effectuate what seems most sensible. This view of absurdity is often linked with related statutory construction principles, such as avoiding harsh or unreasonable results. See, e.g., Thompson v. State, 695 So.2d 691, 693 (Fla.1997) (recognizing “the basic tenet of statutory construction that courts are constrained to avoid a construction that would result in *1049 unreasonable, harsh, or absurd consequences.”) (citations omitted). ' Mixed together, a stew of judicial powers emerges, the exercise of which the stricter approach sees as a “slippery slope” that “can lead to judicial revision of public and private texts to make them (in the judges’ view) more reasonable.” Reading Law, supra, at 237.. Indeed, our supreme court recently said the following in a PRR case:
But the absurdity doctrine is not to be used as a freewheeling tool for courts to second-guess and supplant the policy judgments made by the Legislature. It has long been recognized that the absurdity doctrine “is to be applied to override the literal terms of a statute only under rare and exceptional circumstances.”
Hackley, 95 So.3d at 95 (citation omitted). Given this admonition, deploying the absurdity doctrine or its kin, should be used reservedly.
Turning back to this case, what the trial judge confronted was an unambiguous statute, one that the Fifth District in dicta deemed absurd, a view adopted by the Fourth District. In Louzon v. State, 78 So.3d 678 (Fla. 5th DCA 2012), the Fifth District, although noting it was “unnecessary to our disposition of this appeal,” addressed the statutory interpretation issue, concluding:
To accept Louzon’s argument would place form over substance and would be inconsistent with the Legislature’s clear intent to provide for a greater sentence for individuals who commit a qualifying offense within three years of completion of a previously imposed prison sentence.
Id. at 681. It deemed absurd that Louz-on’s sentence could be enhanced simply by “physically transfer[ring] an individual from jail to a Department of Corrections facility — where the individual would then be entitled to an immediate release.” Id. The Fourth District adopted Louzon’s, reasoning, concluding that an offender inmate was released from a “federal correctional facility” because he “was still in federal custody, even though housed in a Palm Beach County jail in order to perform substantial assistance.” Taylor v. State, 114 So.3d 355, 355-56 (Fla. 4th DCA 2013). It concluded that “release from federal custody while housed at the county jail still constitutes constructive release from a federal correctional facility for purposes of section 775.082(9)(a)(l), Florida Statutes.” Id. (footnote omitted) (emphasis added) (the italicized phrase appears nowhere else in Florida’s jurisprudence).
Despite its misgivings, the trial court was required to follow the Fourth District’s decision, which would extend to a “constructive release” of a state offender from a county jail under the application of the absurdity doctrine. Pardo v. State, 596 So.2d 665, 666 (Fla.1992) (“[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts.”). Our Court is free to reject the reasoning of Taylor and Louzon, but our panel adopts it. My discomfort is that the case for application of the absurdity doctrine is very weak because we have an admittedly unambiguous statute, a plausible basis for the language used, an easy legislative fix if county jails are to be included, no judicial patch that corrects only a technical or ministerial error, and a principle of statutory construction that says “where criminal statutes are susceptible to differing constructions, they must be construed in favor of the accused.” Thompson v. State, 695 So.2d 691, 693 (Fla.1997). The consequence of applying the statute as written is that a class of certain offenders held in non-state county jails, rather than DOC-operated state correctional facilities,, are not subject to sentence enhancements unless they are trans *1050 ported to the specified facilities for release. It may be that transporting Wright from county jail so that he can be “released from a state correctional facility operated by the Department of Corrections” is inefficient, inconvenient, and a not particularly sensible way of ensuring that he falls within the confines of the statute as written; but it seems less-than absurd, particularly when the overwhelming swath of offenders serving time in and being released from a “state correctional facility operated by the Department of Corrections” do qualify for enhanced sentencing and plausible bases for application of the literal text exists. Given the importance of the issue, and whether the absurdity doctrine applies, I would certify the following question for the supreme court’s consideration:
Whether release from a county jail subjects an offender to Prison Releasee Reoffender status under section 775.082(9)(a)l., which states that release must be “from a state correctional facility operated by the Department of Corrections ... following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.”
BY ORDER OF THE COURT.
Ray Mon Wright’s motion for rehearing en banc and certification -of a question of great public importance, filed October 26, 2015, is denied.
LEWIS and WINOKUR, JJ., concur.
MAKAR, J., dissents with opinion.