**DISTRICT COURT OF APPEAL, FIRST DISTRICT**
**2000 Drayton Drive**
**Tallahassee, Florida 32399-0950**
**Telephone No. (850)488-6151**

December 28, 2015

**CASE NO.: 1D14-3003, 1D14-3197**
L.T. No.: 2013-CF-10527-AXXX

| | | |
|---|---|---|
| State of Florida | v. | Ray Mon Wright |
| Appellant / Petitioner(s), | | Appellee / Respondent(s) |

**BY ORDER OF THE COURT:**

Ray Mon Wright's motion for rehearing en banc and certification of a question of great public importance, filed October 26, 2015, is denied.

LEWIS and WINOKUR, JJ., CONCUR. MAKAR, J., DISSENTS WITH OPINION

MAKAR, J., dissenting from the denial of certification.

Our panel has been asked to certify a question of great public importance, the same one proffered in my dissent in this case. The State has not opposed the motion of Ray Mon Wright, but the panel has denied it, prompting this explanation of why certification is appropriate to allow our supreme court to consider the matter. See Art. V, § 3(b)(4), Fla. Const. (Florida Supreme Court "[m]ay review any decision of a district court of appeal that passes upon a question certified by it to be of great public importance").

Cases involving certified questions of "great public importance" share commonalities, most of which exist in this case. See generally Raoul G. Cantero III, Certifying Questions to the Florida Supreme Court: What's So Important?, 76 Fla. B.J. 40, 40 (May 2002) (summarizing and analyzing supreme court caselaw on the topic).

These factors include the importance of the issue; whether its resolution affects parties statewide versus only the individual litigant; whether it is one of "first impression" or arises regularly; whether caselaw is unclear; the significance of judicial and public policy in its resolution; and the relevance of intervening legal developments. Id.; see also Harry Lee Anstead et. al., The Operation and Jurisdiction of the Supreme Court of Florida, 29 Nova L. Rev. 431, 527 (2005) (discussing scope of certified questions). No single factor compels the conclusion that certification is appropriate (of course, no one can force a district court to grant certification), but where a quantum of these factors exists, the balance shifts in favor of certification, particularly given the supreme court's discretionary jurisdiction in this category of cases. Notably, most certified questions involve issues of criminal law, reflecting the importance of this body of law. What's So Important?, 76 Fla. B.J. 40, 40-44 (more than fifty percent of certifications are in the "area of criminal procedure"). A certified question is warranted in this case for several reasons.

First, the certified question has statewide importance: sentencing under the Prison Releasee Reoffender (PRR) Act occurs in every Florida circuit on a daily basis. Its resolution affects more than just Wright—it affects all those across the state who are similarly situated (i.e., those released from somewhere other than "a state correctional facility operated by the Department of Corrections"). The exact number is indeterminate but non-trivial; a number of these cases have passed through the district courts and others are pending. Moreover, resolution of whether section 775.082(9)(a), Florida Statutes,

should be read as written or can be interpreted to apply to non-state facilities is an independent legal question not involving unique or narrow facts.

Second, the certified question is one of first impression that our supreme court may wish to consider, particularly given the multiplicity of ways that judges have viewed its resolution, resulting in unclear caselaw. Some apply the absurdity doctrine to uphold the statute. See, e.g., Taylor v. State, 114 So. 3d 355 (Fla. 4th DCA 2013); Louzon v. State, 78 So. 3d 678 (Fla. 5th DCA 2012). Others claim the statute's language allows for a reasonable construction without applying the absurdity doctrine. See State v. Wright, 40 Fla. L. Weekly D2304a (Oct. 15, 2015) (Winokur, J., concurring). And at least one, id. (Makar, J., dissenting), says the statute is clear and not absurd. Because judicial thinking on the issue isn't homogenous, our supreme court ought to have a chance to weigh in. That one view or result has predominance, or that district courts aren't in direct conflict, doesn't foreclose certification of a question of great public importance. Wright seeks a certified question, not certified conflict.

Third, the issue is no mere legal esoterica. It presents a fundamental question of statutory interpretation with an important overlay of judicial and public policy. Strict construction of statutes is a contemporary judicial mantra; we judges are to apply statutes as they are written, even if we disagree with the ramifications or prefer a different result (the absurdity doctrine providing a narrow safety net).

This case presents a classic example. Wright's eligibility for PRR status requires him to have been "released from a state correctional facility operated by the Department

of Corrections," which he was not. § 775.082(9)(a), Fla. Stat. Everyone agrees he was released from a county jail. For a strict constructionist, the result is simple: apply the statute as written, allowing the legislative branch to correct its own handiwork if it deems it necessary (the simple legislative patch here is to add the phrase "county correctional facility" to the list of release facilities in the statute). The deployment of novel legal fictions (Wright was "constructively released" from a state facility or a Department computer designated his detention facility as "Central Office") serves only to highlight that strict construction is not at work; these are judicial lifelines to a statute that doesn't need them. Applying the statute as written does no injustice to the Legislature; after all, they've told us that Florida's criminal code "shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused." § 775.021(1), Fla. Stat. (2014); see Thompson v. State, 695 So. 2d 691, 693 (Fla. 1997). At least three differing constructions exist here.

Fourth, judicial policy supports certification. Our supreme court recently said in a PRR case that the "absurdity doctrine is not to be used as a freewheeling tool for courts to second-guess and supplant the policy judgments made by the Legislature. It has long been recognized that the absurdity doctrine 'is to be applied to override the literal terms of a statute only under rare and exceptional circumstances.'" State v. Hackley, 95 So. 3d 92, 95 (Fla. 2012) (citation omitted). The concurrence says the majority doesn't rely on the absurdity doctrine, yet the majority adopts and follows caselaw that applies the doctrine, leaving readers to wonder. Putting aside how one might read our panel's

divergent opinions, two district courts apply the absurdity doctrine, an approach that is at odds with at least two of the three opinions in this case. From a judicial policy perspective, only our supreme court can bring order to the jurisprudential confusion, making certification appropriate.

In addition, public policy forms a backdrop in this case, particularly as to whether the Legislature could have meant that PRR status was based on "release[] from a state correctional facility operated by the Department of Corrections." As mentioned in my dissent, a number of plausible rationales exist for why section 775.082(9)(a) is written this way:

> A reasonable person could take the view that offenders released from DOC-operated state prisons are, on average, guilty of more serious crimes such that offenders released from a county facility would not trigger PRR sentencing; or perhaps the Legislature erred on the side of caution, limiting PRR status to releases from state prisons to avoid potential misclassifications of prisoners released from county facilities.

Wright, 40 Fla. L. Weekly D2304a (Makar. J., dissenting). Add to this list that inmates like Wright, who are sentenced to time served in a county facility, are more likely—both on average and at the margin—to be among those considered less dangerous and thereby not subject to PRR sentencing. As a legislative policy matter, it isn't farfetched to think that PRR status requires actual release from the defined facility. Legislative line drawing is a fact of life; and it is no more unreasonable to dismiss a lawsuit filed one day after a statute of limitations has expired than to withhold PRR status for offenders who walk out of county facilities.

Given this case involves almost all of the factors supporting certification of a question of great public importance, and that the State has not opposed doing so, I dissent from the panel's decision to preclude further judicial review of the matter. See The Operation and Jurisdiction of the Supreme Court of Florida, 29 Nova L. Rev. at 527 ("the failure to certify a question eliminates this potential basis for the Supreme Court of Florida's jurisdiction.").

**I HEREBY CERTIFY** that the foregoing is (a true copy of) the original court order.

Served:

| | | |
|---|---|---|
| Hon. Pamela Jo Bondi, A. G. | Hon. Nancy A. Daniels, P. D. | Meredith Charbula |
| Angela R. Hensel, A. A. G. | Leah A. Daza, A. S. A. | Kevin P. Steiger, A. P. D. |

kr

JON S. WHEELER, CLERK

