NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DAZARIAN CORDELL LEWARS,  )
DOC #Y44737,  )
　　　　　　　　　　　　　　　　)
　　　　　　Appellant,  )
　　　　　　　　　　　　　　　　)
v.  )　　　　Case No. 2D15-3471
　　　　　　　　　　　　　　　　)
STATE OF FLORIDA,  )
　　　　　　　　　　　　　　　　)
　　　　　　Appellee.  )
_____)

Opinion filed May 12, 2017.

Appeal from the Circuit Court for Lee
County; Thomas S. Reese, Senior Judge.

Howard L. Dimmig, II, Public Defender, and
Brian Lydic, Special Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Lisa Martin, Assistant
Attorney General, Tampa, for Appellee.

ROTHSTEIN-YOUAKIM, Judge.

　　　　　　A jury found Dazarian Cordell Lewars guilty of burglary of an unoccupied

dwelling (count one) and grand theft (greater than 300 dollars) (count two), and the trial

court sentenced him to concurrent terms of fifteen years' imprisonment as a prison

releasee reoffender (PRR) on count one and thirty-six months' and twenty-seven days'

imprisonment on count two. On appeal, we reject without further comment Lewars's challenge to his conviction on count one, but we agree that the trial court erred in sentencing him as a PRR because he does not qualify as one under the plain language of section 775.082(9)(a)(1)(q), Florida Statutes (2012).[1] Accordingly, we affirm his conviction, reverse his PRR sentence, remand for resentencing, and certify conflict with the First, Fourth, and Fifth Districts as set forth below.

## Background

In case number 09-CF-20276, the trial court adjudicated Lewars guilty of burglary of a structure, grand theft, and dealing in stolen property and sentenced him to concurrent sentences of 364 days' county jail followed by 3 years' probation. After his first violation of probation (VOP), the trial court sentenced him to two years' community control followed by two years' probation. After his second VOP, the trial court sentenced him to ten months' county jail followed by three years' probation.

Lewars was in the Lee County Jail when the trial court, on April 1, 2013, revoked his probation for yet a third time, sentenced him to concurrent terms of 24 months' imprisonment, and awarded him 766 days' jail credit. Because of that award of jail credit, Lewars walked out of the Lee County Jail the next day a free man instead of being transported to a Department of Corrections (DOC) facility.

---

[1]Although we conclude that Lewars does not qualify as a PRR under the plain language of the statute, we in no way fault the trial court for sentencing him as one. To the contrary, because this court had not addressed the issue at the time of Lewars's sentencing, the trial court correctly ruled consistently with the decisions of those district courts that had addressed it. See Pardo v. State, 596 So. 2d 665, 666-67 (Fla. 1992).

- 2 -

On May 30, 2013, Lewars committed the burglary and grand theft that underlie this appeal, and a jury subsequently convicted him of those offenses. At sentencing, the State argued that he qualified as a PRR because he had committed these two offenses less than two months after he had finished serving the twenty-four-month prison sentence imposed upon the third revocation of his probation. The State argued that, although Lewars's 766 days of jail credit had allowed him to walk out of the Lee County Jail rather than ultimately out of a DOC facility, he had been in the DOC's legal custody and the DOC simply had approved his release from the Lee County Sheriff's Office's (LCSO) physical custody. The State called Sergeant Christian Emory of the LCSO to explain this process:

> [Sergeant Emory:] When it comes to sentences that appear would be time served what happens is our classifications department will get ahold of Department of Corrections and they will let us know whether he will be a time served inmate or not. In this instance they did say that he–he would be a time served inmate and they sent the proper documentation, which is a packet. We had Mr. Lewars sign it back in 2013 and at that time he was released from custody.

> [The State:] Okay. Is it fair to say the Department of Corrections gives you the greenlight to go ahead and release him?

> [Sergeant Emory:] Yeah. Yes, after that we will receive a teletype stating that we can release him and he was released. He never went to DOC from–from us.

Notably, the final VOP judgment and sentence in case number 09-CF-20276 states: "It is the sentence of the Court that [Lewars] is hereby committed to the custody of the [DOC]" and "Be Imprisoned: For a term of 24 Months(s) ([DOC] State Prison)." But there is no dispute that Lewars never actually set foot in a DOC facility before committing the burglary and grand theft.

Lewars agreed that the burglary was a qualifying offense but argued that the PRR designation was inapplicable because he had never physically gone to prison. Lewars contended that imprisonment in a state correctional facility is intended to deter offenders from committing future crimes—"for them to essentially be scared straight"—and that the legislature had created the PRR designation to punish more harshly those offenders whose previous stint in prison had not deterred them from committing qualifying offenses upon release. Therefore, Lewars asserted, designating him as a PRR would be inconsistent with the legislature's intent because he had served time only in county jail, which does not have the deterrent effect of a state correctional facility. The trial court disagreed and sentenced Lewars as a PRR on count one.

## Analysis

Whether Lewars qualifies as a PRR under section 775.082(9)(a)(1) is a question of statutory interpretation that we review de novo. See State v. Hackley, 95 So. 3d 92, 93 (Fla. 2012). "The first place we look when construing a statute is to its plain language—if the meaning of the statute is clear and unambiguous, we look no further." Id. In construing the statute's plain language, "words or phrases in a statute must be construed in accordance with their common and ordinary meaning," Atwater v. Kortum, 95 So. 3d 85, 90 (Fla. 2012) (quoting Donato v. Am. Tel. & Tel. Co., 767 So. 2d 1146, 1154 (Fla. 2000)), and "phrases within a statute are not to be read in isolation, but rather should be construed within the context of the entire section," Thompson v. State, 695 So. 2d 691, 692 (Fla. 1997). "We resort to other rules of statutory construction only where the statute is ambiguous in the sense that it could be reasonably understood to

- 4 -

mean two different things." Burgess v. State, 198 So. 3d 1151, 1155 (Fla. 2d DCA 2016).

Mindful of these caveats, we hold that Lewars does not qualify as a PRR under the plain language of the statute. The pertinent language of section 775.082(9)(a)(1)(q) defines a PRR as "any defendant who commits, or attempts to commit . . . burglary of a dwelling . . . within 3 years after being released from a state correctional facility operated by the Department of Corrections or a private vendor . . . ." (Emphasis added.) In requiring release from a DOC "facility"—rather than, for example, from DOC "custody" or simply "by DOC"—PRR status plainly contemplates release from a physical plant operated by the DOC (or a private vendor).[2] There is no dispute that, less than two months before committing the qualifying PRR offense of burglary of a dwelling, Lewars was released from a county jail having never spent a moment in a DOC facility. Consequently, under the unambiguous language of the statute, he does not qualify as a PRR.

Normally, our analysis would end here, see Hackley, 95 So. 3d at 93 ("[I]f the meaning of the statute is clear and unambiguous, we look no further."), but we recognize (as does the State) that the three other district courts of appeal that have addressed the issue would have held that Lewars does qualify as a PRR, see State v.

_____

[2]Webster's New World College Dictionary 485 (3d ed. 1996), which was published near the time that the legislature created the PRR designation, see ch. 97-239, § 2, at 4398-4401, 4404, Laws of Fla. (effective May 30, 1997), defines a "facility," in pertinent part, as "a building, special room, etc., that facilitates or makes possible some activity." See also Sanders v. State, 35 So. 3d 864, 871 (Fla. 2010) ("When a word in a statute is not expressly defined, it is ' "appropriate to refer to dictionary definitions . . ." in order to ascertain the plain and ordinary meaning' of the word." (omission in original) (quoting Sch. Bd. of Palm Beach Cty. v. Survivors Charter Sch., Inc., 3 So. 3d 1220, 1233 (Fla. 2009))).

Wright, 180 So. 3d 1043 (Fla. 1st DCA 2015); Taylor v. State, 114 So. 3d 355 (Fla. 4th DCA 2013); Louzon v. State, 78 So. 3d 678 (Fla. 5th DCA 2012). Consequently, we write to explain why we find the reasoning of those courts unpersuasive.

In Louzon, 78 So. 3d at 679-80, the Fifth District reversed Louzon's robbery conviction and remanded for a new trial but nonetheless addressed Louzon's challenge to his PRR designation "in the event that Louzon [was] ultimately convicted of a robbery offense." Id. at 680. Like Lewars, Louzon argued that the trial court had erred in sentencing him as a PRR because his award of jail credit had precluded his physical transfer to a DOC facility. Id. In rejecting this argument, the Fifth District stated that Louzon had been in the DOC's "legal custody" and had been "constructively" held in a state prison facility when his sentence had expired and that "[t]o accept Louzon's argument would place form over substance and would be inconsistent with the Legislature's clear intent to provide for a greater sentence for individuals who commit a qualifying offense within three years of completion of a previously imposed prison sentence." Id. at 680-81. The Fifth District stated further:

> To accept Louzon's argument would also mean that in order for the State to ensure that a defendant in Louzon's situation was eligible for subsequent PRR sentencing, it would have to physically transfer an individual from jail to a Department of Corrections facility—where the individual would then be entitled to an immediate release. Courts should not construe a statute so as to achieve an absurd result.

Id. at 681.

In Taylor, 114 So. 3d at 355-56, the Fourth District adopted Louzon's reasoning and rejected the same argument by an offender who, although in federal custody, was "housed in a Palm Beach County jail in order to perform substantial

- 6 -

assistance."[3] Taylor, 114 So. 3d at 356. The Fourth District reasoned that Taylor's "release from federal custody while housed at the county jail still constitutes constructive release from a federal correctional facility for purposes of" the PRR statute. Id.

While this appeal was pending, the First District relied on Louzon and Taylor to reverse a trial court's refusal to impose a PRR sentence under almost identical circumstances:

> [Wright] had been sentenced to 454 days' imprisonment with credit for 454 days served in county jail. Pursuant to the judgment in that case, which was entered on June 12, 2013, [Wright] was "committed to the custody of the Department of Corrections." The Department of Corrections' Inmate Release Information Detail explained that [Wright] was released on June 13, 2013, and the Release Facility was listed as the "CENTRAL OFFICE."

Wright, 180 So. 3d at 1044. Like Lewars, "rather than physically being released from a state correctional facility operated by the Department of Corrections or a private vendor, [Wright] was physically released from the county jail as a result of his sentence of time served." Id. at 1045. And, like Lewars: "If not for [Wright's] credit for time served, it would have been illegal to serve this sentence in county jail. It is for this reason that the Department of Corrections processed [Wright] at the time of his sentence and indicated 'Central Office' as his release facility." Id. at 1047 (Winokur, J., concurring).

The Wright majority imported wholesale the PRR discussions of Louzon and Taylor and held that Wright's "release from custody constituted a constructive release from the Department of Corrections and a state correctional facility for purposes

---

[3]PRR status also applies to an offender who commits a qualifying felony within three years after being released from, among other places, "a correctional institution of . . . the United States." See § 775.082(9)(a)(1).

of section 775.082(9)(a)1." Wright, 180 So. 3d at 1044-45. The majority rejected the notion that walking out of county jail rather than out of a prison rendered Wright ineligible for PRR sentencing:

> [W]e decline to hold that [Wright], who committed a PRR-qualifying offense, who was committed to the Department's custody, and whose release facility was listed as the central office, could not be considered a PRR simply by virtue of the fact that he was sentenced to time served and physically walked out of a county jail. We see nothing in the PRR statute to indicate that the Legislature intended for a defendant in this situation to avoid PRR status in the future.

Id. at 1045-46. Asserting that the majority had improperly resorted to the "absurdity doctrine" (an assertion that the concurrence denied), the dissent maintained that the clear and unambiguous terms of the PRR statute precluded designating Wright as a PRR and that such a result was not so absurd as to allow the court to deviate from the statute's plain meaning. Id. at 1047-48 (Makar, J., dissenting).

We decline to adopt the reasoning of Wright, Taylor, and Louzon because, in concluding that the legislature intended to sentence those in Lewars's position as a PRR, they seem to have skipped the "plain language" step of the statutory-construction analysis. See Hackley, 95 So. 3d at 93. Otherwise, the First District would not have "[seen] nothing in the PRR statute to indicate that the Legislature intended for a defendant in this situation to avoid PRR status in the future." Wright, 180 So. 3d at 1046. And the Fifth District would not have concluded that Louzon's argument "would place form over substance and would be inconsistent with the Legislature's clear intent to provide for a greater sentence for individuals who commit a qualifying offense within three years of completion of a previously imposed prison sentence," Louzon, 78 So. 3d

- 8 -

at 681, without explaining how it even discerned this "clear intent" if not from the plain and unambiguous language of the statute itself.

Instead, the other district courts impermissibly expanded the plain meaning of the words in the statute—i.e., by conflating the concrete "facility" with the more nebulous "custody"—and by impermissibly injecting words—i.e., " 'constructive' release"—that simply are not there.[4]  See McDade v. State, 154 So. 3d 292, 297 (Fla. 2014) (explaining that, when construing a statute, courts "must give the 'statutory language its plain and ordinary meaning,' and [are] not 'at liberty to add words . . . that were not placed there by the Legislature' " (omission in original) (quoting Exposito v. State, 891 So. 2d 525, 528 (Fla. 2004))).  The statute specifically identifies the class of

---

[4]We note that the preamble to the Prison Releasee Reoffender Punishment Act describes the act as providing for enhanced sentencing "under specified circumstances when the reoffender has been released from correctional custody."  Ch. 97-239, at 4397, Laws of Fla.  The word "custody," however, does not appear in the statute itself, and " 'prefatory language' cannot expand or restrict the otherwise unambiguous language of a statute."  Dorsey v. State, 402 So. 2d 1178, 1181 (Fla. 1981).  Moreover, the legislative intent actually codified in section 775.082(9)(d)(1) is consistent with our construction of the plain language of section 77.082(9)(a)(1). Section 775.082(9)(d)(1) provides:

> It is the intent of the Legislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection, unless the state attorney determines that extenuating circumstances exist which preclude the just prosecution of the offender, including whether the victim recommends that the offender not be sentenced as provided in this subsection.

(Emphasis added.)  The legislature intended, therefore, that the offender have been "previously released from prison" and also "meet the criteria in paragraph (a)" of subsection 775.082(9), which, as explained above, clarifies that the offender must have been released from a "state correctional facility operated by the [DOC] or a private vendor . . . ."  § 775.082(9)(a)(1).

offenders to which it applies, and the legislature easily could have employed broader language to include within its reach those offenders who had been released from a county jail facility because the amount of their jail credit exceeded the length of their sentence.[5]  But it did not.  And, under the well-established principles of statutory construction, we may not.  See State v. Quetglas, 901 So. 2d 360, 363 (Fla. 2d DCA 2005) ("Under the expressio unius canon . . . and the interchangeable inclusio unius canon, 'when a law expressly describes the particular situation in which something should apply, an inference must be drawn that what is not included by specific reference was intended to be omitted or excluded.' . . .  The expressio unius canon is thus deployed to defeat an argument that a particular item or matter is included by implication within the scope of a statutory provision." (quoting Gay v. Singletary, 700 So. 2d 1220, 1221 (Fla. 1997))).

## The Absurdity Doctrine

In rare and exceptional circumstances, the "absurdity doctrine" allows courts to depart from applying a statute's plain meaning when adherence to "a sterile literal interpretation . . . would lead to absurd results."  Hackley, 95 So. 3d at 95 (quoting Maddox v. State, 923 So. 2d 442, 448 (Fla. 2006)).  The doctrine, however, "should be reserved for cases where applying the plain meaning would border on irrationality.  Only then can we be sure that a textual interpretation would yield 'an absurd result totally

---

[5]Indeed, the legislature has differentiated between a "jail" and a "state correctional facility"—and also between "incarceration" and "custody"—in other sections of chapter 775.  See, e.g., § 775.21(10)(g), Fla. Stat. (2016) (providing that third-degree felony offense for knowingly assisting noncompliant sexual predator from eluding law enforcement "does not apply if the sexual predator is incarcerated in or is in the custody of a state correctional facility, a private correctional facility, a local jail, or a federal correctional facility").

incongruous with the will of the people.' " Maddox v. State, 923 So. 2d 442, 452 (Fla. 2006) (Cantero, J. dissenting) (quoting Plante v. Smathers, 372 So. 2d 933, 937 (Fla. 1979)). Otherwise, "[i]f expanded beyond rational basis review, the absurdity exception would threaten to undermine the separation of powers by allowing judges to substitute their own views of wise public policy for the compromises struck by legislators." Id. (Cantero, J. dissenting).

The State does not argue that the absurdity doctrine applies in this case. In Louzon, however, the Fifth District asserted:

> To accept Louzon's argument would also mean that in order for the State to ensure that a defendant in Louzon's situation was eligible for subsequent PRR sentencing, it would have to physically transfer an individual from jail to a Department of Corrections facility—where the individual would then be entitled to an immediate release. Courts should not construe a statute so as to achieve an absurd result.

Louzon, 78 So. 3d at 681. And the First District in Wright arguably based its decision on the doctrine, at least implicitly. See Wright, 180 So. 3d at 1047 (Makar, J., dissenting) ("Because the statute is so clearly written, it takes the absurdity doctrine to conform it to what the judiciary believes the Legislature actually intended."). But see id. (Winokur, J., concurring) ("I note that the majority opinion does not rely upon the 'absurdity doctrine' to support its ruling, and write separately to explain why this doctrine is unnecessary to reach the result.").

Accordingly, we address the doctrine here only to agree with Judge Makar that it has no role in construing the PRR statute. Multiple rational explanations exist for excluding offenders like Lewars from PRR sentencing. As Lewars argued below, the legislature reasonably could have excluded offenders like him from PRR status because

it intended only to punish, and to protect society from, those prior offenders who had not been dissuaded by the possibility of extended prison terms despite having already had a sample.  Or, as Judge Makar observed:

> A reasonable person could take the view that offenders released from DOC-operated state prisons are, on average, guilty of more serious crimes such that offenders released from a county facility would not trigger PRR sentencing; or perhaps the Legislature erred on the side of caution, limiting PRR status to releases from state prisons to avoid potential misclassifications of prisoners released from county facilities. Even if these are anomalous views, they are not wholly unreasonable . . . .

Wright, 180 So. 3d at 1048 (Makar, J., dissenting).  Or the legislature could have reasoned that enhanced sentencing would have been unwarranted for those like Lewars who had previously been confined for longer than their sentence of imprisonment required.

In contrast, the Fifth District's illustration of why it would be absurd to interpret the PRR statute as we do misses the mark.  Our interpretation would not require the State, "to ensure that a defendant in [Lewars's] situation was eligible for subsequent PRR sentencing, . . . to physically transfer an individual from jail to a Department of Corrections facility—where the individual would then be entitled to an immediate release."  See Louzon, 78 So. 3d at 681.  A defendant in Lewars's situation would simply be ineligible for PRR sentencing; that the State would have to undertake some absurd machination to avoid that result certainly does not render the result itself absurd.

### Conclusion

Lewars, therefore, does not qualify as a PRR based on the plain language of the statute, and this disposition is not one of those rare circumstances involving such

an irrational outcome that the absurdity doctrine compels us to ignore that plain language.  Accordingly, we affirm Lewars's conviction, reverse his PRR sentence on count one, remand for resentencing, and certify conflict with the First District's decision in Wright, the Fourth District's decision in Taylor, and the Fifth District's decision in Louzon.

Affirmed in part; reversed in part; remanded; conflict certified.


NORTHCUTT and LUCAS, JJ., Concur.