# Supreme Court of Florida

_____

No. SC17-1002
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**DAZARIAN CORDELL LEWARS,**
Respondent.

December 13, 2018

LAWSON, J.

This case is before the Court for review of the decision of the Second

District Court of Appeal in *Lewars v. State*, 42 Fla. L. Weekly D1098 (Fla. 2d

DCA May 12, 2017), which certified conflict with the decisions in *State v. Wright*,

180 So. 3d 1043 (Fla. 1st DCA 2015), *Taylor v. State*, 114 So. 3d 355 (Fla. 4th

DCA 2013), and *Louzon v. State*, 78 So. 3d 678 (Fla. 5th DCA 2012). The

certified conflict concerns the construction of one element of the definition of

"prison releasee reoffender" provided in section 775.082(9)(a)1., Florida Statutes

(2012). The part of the statute at issue requires the defendant, within the three

years preceding his or her commission of a qualifying offense, to have been

"released from a state correctional facility operated by the Department of Corrections or a private vendor." § 775.082(9)(a)1. The First and Fifth District Courts of Appeal in *Wright* and *Louzon* concluded that this language is satisfied when a defendant is released from a county jail after serving a sentence entirely in the county jail where the sentence would have required transfer to a Florida prison but for the accumulation of jail credit. *Wright*, 180 So. 3d at 1045-46; *Louzon*, 78 So. 3d at 680-81. The Second District in this case disagreed with this conclusion and reached the opposite result from the First and Fifth Districts on essentially identical facts. *Lewars*, 42 Fla. L. Weekly at D1099-1100. The Second District also disagreed with the Fourth District Court of Appeal's decision in *Taylor*, which construes similar language from the same statute involving release from a "correctional institution of . . . the United States," applies its construction to a defendant's release from a county jail after being temporarily housed there, and reaches a result consistent with *Wright* and *Louzon*. *Id.*; *Taylor*, 114 So. 3d at 355-56.

We have jurisdiction due to the certification of conflict. *See* art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we approve the decision of the Second District in *Lewars* and hold that release from a county jail under the circumstances of this case does not satisfy the language of section 775.082(9)(a)1.

We therefore disapprove the decisions of the First, Fourth, and Fifth Districts in *Wright*, *Taylor*, and *Louzon*.

## FACTS

Dazarian Cordell Lewars was convicted of burglary of an unoccupied dwelling. *Lewars*, 42 Fla. L. Weekly at D1098. For this offense, Lewars was sentenced to a mandatory minimum term of fifteen years' imprisonment under section 775.082(9), the prison releasee reoffender (PRR) statute, over his objection that the PRR statute does not apply to him. *Id*. at D1099. On appeal, the Second District agreed with Lewars and reversed his PRR sentence, holding that Lewars does not qualify as a PRR because he was not "released from a state correctional facility operated by the Department of Corrections [(DOC)] or a private vendor" within the three years preceding the burglary at issue, as required by the pertinent language of the PRR statute. *Id.* at D1099-1101.

To support PRR sentencing, the trial court relied on the fact that Lewars had been released from a twenty-four-month sentence within the three years preceding the burglary. *Id*. The legal issue concerning the applicability of the PRR statute centers on whether Lewars' release from that sentence satisfies the "released from" language of the PRR statute, given that Lewars served his prior twenty-four-month sentence entirely in the county jail, rather than in prison, due to his accumulation

of 766 days' jail credit while he awaited a violation-of-probation hearing and sentencing. *Id.* at D1099.

Although the sentencing order for the prior case committed Lewars to the custody of the DOC for a prison sentence, Lewars was never physically transferred to a prison facility. *Id.* After sentencing in that case, the local sheriff's office observed that Lewars had been sentenced to time served and contacted the DOC for instructions. *Id*. Upon receiving confirmation from the DOC that Lewars was entitled to release, the local sheriff's office had Lewars sign a "prison release form" sent by the DOC and then released him directly from the county jail. *Id*. DOC records state that Lewars was released from the "Central Office." However, it is undisputed that "Lewars never actually set foot in a DOC facility before committing the burglary" for which he was given a PRR sentence. *Id*.

In reversing Lewars' PRR sentence, the Second District relied on the plain, unambiguous language of the PRR statute, reasoning as follows:

> The pertinent language of section 775.082(9)(a)(1)(q) defines a PRR as "any defendant who commits, or attempts to commit . . . burglary of a dwelling . . . *within 3 years after being released from a state correctional facility operated by the Department of Corrections* or a private vendor . . . ." (Emphasis added.) In requiring release from a DOC "facility"—rather than, for example, from DOC "custody" or simply "by DOC"—PRR status plainly contemplates release from a physical plant operated by the DOC (or a private vendor).[n.2]
>
> > [n.2] Webster's New World College Dictionary 485 (3d ed. 1996), which was published near the time that the legislature created the PRR designation, see ch. 97-239, §

2, at 4398-4401, 4404, Laws of Fla. (effective May 30, 1997), defines a "facility," in pertinent part, as "a building, special room, etc., that facilitates or makes possible some activity." *See also Sanders v. State*, 35 So. 3d 864, 871 (Fla. 2010) ("When a word in a statute is not expressly defined, it is ' "appropriate to refer to dictionary definitions . . ." in order to ascertain the plain and ordinary meaning' of the word." (omission in original) (quoting *Sch. Bd. of Palm Beach Cty. v. Survivors Charter Schs., Inc.*, 3 So. 3d 1220, 1233 (Fla. 2009))).

There is no dispute that, less than two months before committing the qualifying PRR offense of burglary of a dwelling, Lewars was released from a county jail having never spent a moment in a DOC facility. Consequently, under the unambiguous language of the statute, he does not qualify as a PRR.

*Id.* at D1099.

The Second District recognized that "the three other district courts of appeal that have addressed the issue would have held that Lewars does qualify as a PRR" and, accordingly, certified conflict with the three decisions establishing this point: *Wright*, *Taylor*, and *Louzon*. *Id.* at D1099, D1101. The Second District noted that these three cases, like the case before it, all involved defendants who had been released from either federal or DOC custody while housed in county jails and that these courts had found the PRR statute applicable under a theory of "constructive release" from qualifying facilities. *Id.* at D1100.[1] Rejecting these holdings, the

_____

1. As an alternative to the language directly at issue in this case, the PRR statute defines "prison releasee reoffender" as a defendant who commits a qualifying offense "within 3 years after being released from a correctional

- 5 -

Second District pointed out that the plain language of the statute requires release from a qualifying "facility," not release from qualifying "custody." *Id.* The Second District also disputed the proposition—advanced by the Fifth District, embraced by the Fourth District, and accepted by one judge in the First District—that the custody-based construction of the statute is appropriate under the absurdity exception to the plain-language doctrine. *Id.* at D1100-01. We accepted review to resolve the certified conflict.

## ANALYSIS

The certified conflict concerns an issue of statutory construction, which we review de novo. *See Lopez v. Hall*, 233 So. 3d 451, 453 (Fla. 2018); *State v. Miller*, 227 So. 3d 562, 563 (Fla. 2017). To answer a question of statutory construction, courts must first look to the statute's language, *Miller*, 227 So. 3d at 563, considering its words in the context of the entire section rather than in isolation, *Thompson v. State*, 695 So. 2d 691, 692 (Fla. 1997). If the statutory language is clear and unambiguous, the court must recognize the statute's plain meaning and, therefore, need not employ any other rules of statutory construction.

---

institution of . . . the United States . . . following incarceration for an offense for which the sentence is punishable by more than 1 year in this state." § 775.082(9)(a)1.

*Miller*, 227 So. 3d at 563 (quoting *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla. 2005)); *Lopez*, 233 So. 3d at 453.

The plain-language approach is required because the courts of this state lack the "power to construe an unambiguous statute in a way which would extend, modify, or limit[] its express terms or its reasonable and obvious implications." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (emphasis omitted) (quoting *Am. Bankers Life Assurance Co. of Fla. v. Williams*, 212 So. 2d 777, 778 (Fla. 1st DCA 1968)). Such a construction "would be an abrogation of legislative power." *Id.*; *see* art. II, § 3, Fla. Const. Thus, "[e]ven where a court is convinced that the legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity." *St. Petersburg Bank & Trust Co. v. Hamm*, 414 So. 2d 1071, 1073 (Fla. 1982) (quoting *Van Pelt v. Hilliard*, 78 So. 693, 694 (Fla. 1918)).

Section 775.082(9)(a)1. defines "prison releasee reoffender" as "any defendant who commits, or attempts to commit" any qualifying offense (as enumerated in the statute) within three years after a certain event, described in the statute as follows:

> being released from a state correctional facility operated by the Department of Corrections or a private vendor or . . . being released from a correctional institution of another state, the District of Columbia, the United States, any possession or territory of the United

States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.[2]

The district courts disagree over whether a defendant is "released from a state correctional facility operated by the Department of Corrections or a private vendor" when the defendant is physically released from a county jail after having been committed to the legal custody of the Department of Corrections but not physically taken to a facility operated by the Department of Corrections. *Compare Lewars*, 42 Fla. L. Weekly at D1099-1100, *with Wright*, 180 So. 3d at 1044-46, and *Louzon*, 78 So. 3d at 680-81; *cf. Taylor*, 114 So. 3d at 355-56 (construing the similar language pertaining to federal institutions consistently with the decisions in *Louzon* and *Wright*). In support of the proposition that it is the legal, rather than physical, custody that matters, the State argues that release from a "prison sentence," as opposed to a prison facility, is sufficient to satisfy the language of this provision.

However, the language at issue unambiguously supports the conclusion reached by the Second District, that release from a county jail does not satisfy the "released from" element of statute's PRR definition. This language addresses the

---

2. The 2012 statute is cited in this opinion because Lewars was released from the sentence the State argues satisfies section 775.082(9)(a)1. in April 2013. The present version of the PRR statute is identical to the 2012 version.

defendant's release from a "facility," not from the legal custody of a particular entity and not from a particular sentence length, and it requires that that facility be one "operated by the Department of Corrections or a private vendor." A county jail is not "operated by the Department of Corrections or a private vendor." *See Hopkins v. State*, 105 So. 3d 470, 474 (Fla. 2012) ("A 'jail' is a detention center used by local governments for persons who are awaiting trial or have been convicted of misdemeanors." (citing *Black's Law Dictionary*, 910 (9th ed. 2009)). Therefore, a defendant's release from a county jail is not sufficient to satisfy the plain language of section 775.082(9)(a)1.

The surrounding language in section 775.082 confirms the plain meaning of the specific provision at issue, showing that release from a particular type of facility, namely a prison or its equivalent—and not a county jail—is a necessary component of the PRR definition. The PRR statute's focus on the facility where a defendant served a prior sentence begins in the title of section 775.082, which notes that this section provides "mandatory minimum sentences for certain reoffenders previously released from prison." That focus is also manifested in the label that the statute gives to a defendant who qualifies for these mandatory minimum sentences: "prison releasee reoffender." § 775.082(9)(a)1. This label, like the title of the section, references release from prison, not jail, and not a "prison sentence."

Continuing its focus on prisons as facilities, the PRR statute makes release from "a correctional institution" of certain other jurisdictions a way to satisfy the "released from" component of the PRR definition. § 775.082(9)(a)1. Specifically, it provides the following as the alternative "released from" event:

> being released from a correctional institution of another state, the District of Columbia, the United States, any possession or territory of the United States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.

§ 775.082(9)(a)1. "Correctional institution" is commonly understood to refer to a facility within a prison system, particularly in Florida. *Cf. Gaulden v. State*, 195 So. 3d 1123, 1128-29 (Fla. 2016) (Canady, J., concurring in result) (relying on the common understanding of a particular phrase to decide its meaning). Further, the jurisdictions listed in section 775.082(9)(a)1. as the categories of the governmental entities to which the referenced "correctional institution" must belong identify sovereign entities, rather than subdivisions of the sovereigns. The fact that the correctional institutions referenced in this portion of the definition must be "of" the highest governmental divisions of the jurisdictions at issue shows that this portion of the statute is concerned with identifying facilities that are equivalent to prisons in Florida's criminal justice system. *See* § 775.082(9)(a)1. The requirement of section 775.082(9)(a)1. that incarceration in a "correctional institution" of another sovereign jurisdiction be "for an offense for which the sentence is punishable by

more than 1 year in this state" is limiting language that further ensures that the institutions of other jurisdictions be sufficiently equivalent to Florida prisons before incarceration in those facilities can satisfy the "released from" element of the PRR definition.

As another indication of a focus on prison, as opposed to jail, the PRR statute states that "[i]t is the intent of the Legislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection." § 775.082(9)(d)1. This direct statement of legislative intent—the only one in the statute—focuses on "release[] from prison," which is a type of facility, rather than release from a prison-length sentence.

That the length of the sentence is not a determining factor under section 775.082(9)(a)1. is illustrated by contrasting that provision with the following alternative definition provided in the PRR statute:

> "Prison releasee reoffender" also means any defendant who commits or attempts to commit any offense listed in sub-subparagraphs (a)1.a.-r. while the defendant was serving a prison sentence or on escape status from a state correctional facility operated by the Department of Corrections or a private vendor or while the defendant was on escape status from a correctional institution of another state, the District of Columbia, the United States, any possession or territory of the United States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.

- 11 -

§ 775.082(9)(a)2. This alternative PRR definition shows that the Legislature knew how to make the prison sentence, as opposed to the facility, the focus of the definitional inquiry, if the Legislature intended to do so. *See Cason v. Fla. Dep't of Mgmt. Servs.*, 944 So. 2d 306, 315 (Fla. 2006) ("[W]e have pointed to language in other statutes to show that the Legislature 'knows how to' accomplish what it has omitted in the statute in question."); *cf.* § 775.084(1)(a)2.b., (b)2.b., (c)2.b., (d)2.b., Fla. Stat. (2018) (defining "[h]abitual felony offender," "[h]abitual violent felony offender," "[t]hree-time violent felony offender," and "[v]iolent career criminal" in part by reference to the defendant's prior "release from a prison sentence").

For the foregoing reasons, we conclude that to satisfy the "released from" aspect of the PRR definition based on release from "a state correctional facility operated by the Department of Corrections or a private vendor," a defendant must have been incarcerated in and physically released from a prison, and not a county facility operated by the local government, within the statutory period. We agree with the observation made below that, in reaching a different or inconsistent conclusion, the courts in *Wright*, *Taylor*, and *Louzon* "skipped the 'plain language' step of the statutory-construction analysis" and injected into the PRR statute words, such as "constructive release," that "simply are not there." *Lewars*, 42 Fla. L. Weekly at D1100.

Contrary to the suggestions of the courts in *Wright*, *Taylor*, and *Louzon*, the absurdity doctrine does not justify recognizing release from the legal, as opposed to physical, custody of the DOC (or, in the case of *Taylor*, the federal government) as a means of satisfying the "released from" component of the PRR definition. Although the Court has stated that "a literal interpretation of the language of a statute need not be given when to do so would lead to an unreasonable or ridiculous conclusion," courts must have "cogent reasons for believing that the letter [of the law] does not accurately disclose the [legislative] intent" before departing from it. *Holly*, 450 So. 2d at 219 (citing *Johnson v. Presbyterian Homes of Synod of Fla., Inc.*, 239 So. 2d 256 (Fla. 1970), and then quoting *State ex rel. Hanbury v. Tunnicliffe*, 124 So. 279, 281 (Fla. 1929)). This rule, sometimes called the "absurdity doctrine," "is not to be used as a freewheeling tool for courts to second-guess and supplant the policy judgments made by the Legislature." *State v. Hackley*, 95 So. 3d 92, 95 (Fla. 2012). Therefore, it applies "only under rare and exceptional circumstances." *Id.* (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)). Such circumstances are not attendant to section 775.082(9)(a)1.

Judge Makar, in his dissent from the *Wright* decision, explained why the plain language of section 775.082(9)(a)1. is not absurd:

> A reasonable person could take the view that offenders released from
> DOC-operated state prisons are, on average, guilty of more serious
> crimes such that offenders released from a county facility would not
> trigger PRR sentencing; or perhaps the Legislature erred on the side of

- 13 -

> caution, limiting PRR status to releases from state prisons to avoid potential misclassifications of prisoners released from county facilities. Even if these are anomalous views, they are not wholly unreasonable; in fact, they make some sense.

*Wright*, 180 So. 3d at 1048 (Makar, J., dissenting). To this analysis, the *Lewars* court added two possible reasons the Legislature might have chosen not to apply to the PRR statute to the circumstances presented in this case: (1) "the legislature reasonably could have excluded offenders like [Lewars] from PRR status because it intended only to punish, and to protect society from, those prior offenders who had not been dissuaded by the possibility of extended prison terms despite having already had a sample," or (2) "the legislature could have reasoned that enhanced sentencing would have been unwarranted for those like Lewars who had previously been confined for longer than their sentence of imprisonment required." *Lewars*, 42 Fla. L. Weekly at D1100-01.

We agree with the rationale stated by Judge Makar and the *Lewars* court. Indeed, this rationale is consistent with our identification of the basis for the PRR statute's classification system in *State v. Cotton*, 769 So. 2d 345, 356 (Fla. 2000), when addressing an equal protection challenge: "While the Act's classification scheme does not differentiate based upon the character of the releasee's prior crimes, it *does* focus on the character (and severity) of the latest criminal conduct, together with the fact that recent imprisonment did not dissuade the defendant from engaging in the qualifying offense." In addition, we agree with Judge Makar's

- 14 -

observation that "[l]egislative line drawing is a fact of life; and it is no more unreasonable to dismiss a lawsuit filed one day after a statute of limitations has expired than to withhold PRR status for offenders who walk out of county facilities." *Wright*, 180 So. 3d at 1052 (Makar, J., dissenting from denial of certification).

Further, we agree with Judge Makar's point that the absurdity doctrine is not appropriate for this statute because, to reach the interpretation advanced by the State and the courts in *Wright*, *Taylor*, and *Louzon*, we would have to rewrite the statute, rather than correct a "technical or ministerial error." *Wright*, 180 So. 3d at 1048-49 (Makar, J., dissenting). This we cannot do. *See Fla. Dep't of Revenue v. Fla. Mun. Power Agency*, 789 So. 2d 320, 324 (Fla. 2001) ("[C]ourts cannot judicially alter the wording of statutes . . . . A court's function is to interpret statutes as they are written and give effect to each word in the statute.") (footnote omitted).

Nevertheless, to bolster its argument under the absurdity doctrine, the State identifies a number of potential scenarios that it argues could result in an arbitrary denial of the State's opportunity to seek PRR sentencing against a defendant who would have qualified but for fortuitous circumstances. The State argues that these considerations show that the plain-language construction we have reached would violate defendants' rights to equal protection. Although it is proper to consider

potential constitutional infirmities in a plain-language reading of a statute when deciding whether the absurdity doctrine justifies departure from the plain language, *see Larimore v. State*, 2 So. 3d 101, 115 (Fla. 2008) (considering whether a particular construction of a statute would be "in accord with fairness and due process considerations" in applying the absurdity doctrine), we do not agree that requiring actual release from a prison, as opposed to a jail, results in either absurdity or a denial of equal protection.

The concerns expressed by the State in this case are addressed by our analysis in *Grant v. State*, 770 So. 2d 655, 660 (Fla. 2000), where we rejected a similar equal protection challenge to the PRR statute (which at that time did not include release from federal prison as an alternative way to satisfy the "released from" requirement):

> [Grant] contends that the Act draws no rational distinction between offenders who serve county jail sentences and those who commit the same acts and yet serve short prison sentences; between those who commit a new offense on the third anniversary of release from prison and others who commit a similar offense three years and a day after release; and between offenders who commit enumerated felonies within three years after their release from the Florida state prison system and those who were recently released from federal prison, local jails or other state prisons. . . . As observed by the Fifth District in *King*[*v. State*, 557 So. 2d 899, 902 (Fla. 5th DCA 1990)], "[e]qual protection does not require a state to choose between attacking every aspect of a problem or not attacking it at all." *Id.* at 902 (citing *In re Estate of Greenberg*, 390 So. 2d 40, 46 (Fla. 1980)). "It is not a requirement of equal protection that every statutory classification be all-inclusive." Rather, "the statute must merely apply equally to members of the statutory class and bear a reasonable relationship to

> some legitimate state interest." *LeBlanc v. State*, 382 So. 2d 299, 300 (Fla. 1980) (citations omitted).
>
> The Legislature "has wide discretion in creating statutory classifications, and there is a presumption in favor of validity." *State v. Leicht*, 402 So. 2d 1153, 1154 (Fla. 1981) (citations omitted). A statutory classification will be deemed to violate equal protection only if it causes "different treatments so disparate as relates to the difference in classification so as to be wholly arbitrary." *In Re Estate of Greenberg*, 390 So. 2d 40, 42 (Fla. 1980) (citations omitted). As we have stated in a different context, where, as here, no suspect classification is involved, "the statute need only bear a reasonable relationship to a legitimate state interest." Some inequality or imprecision will not "render a statute invalid." *Acton v. Fort Lauderdale Hospital*, 440 So. 2d 1282, 1284 (Fla. 1983).

We concluded in *Grant* that the PRR statute survived an equal protection challenge because it is reasonably related to a legitimate state interest, a test that we explained tolerates "[s]ome inequity or imprecision" in statutory classifications. *Id*. at 660. That legitimate state interest is, in part, an interest in heightened punishment for repeat offenders whose recent imprisonment "did not dissuade [them] from engaging in the qualifying offense[s]." *Id*. (quoting *Cotton*, 769 So. 2d at 356). This reasoning applies equally to the arguments presented in this case.

## CONCLUSION

For the foregoing reasons, we conclude that "release from a state correctional facility operated by the Department of Corrections or a private vendor," § 775.082(9)(a)1., does not include release from a county jail. Therefore, commission of a PRR-qualifying offense within three years of release from jail, rather than prison, does not satisfy the requirements of section 775.082(9)(a)1.

- 17 -

Accordingly, we approve the Second District's decision in this case and disapprove the decisions of the First and Fifth Districts in *Wright* and *Louzon*. We also disapprove the decision of the Fourth District in *Taylor*, which construes different language than what is directly at issue in this case but relies on *Louzon* to arrive at a result inconsistent with the holding we reach in this case.

Ultimately, the State may be correct in its assertion that the Legislature intended for defendants who are sentenced to prison but released from county jails without ever setting foot in a prison to be punished as PRRs. Or, it is possible that the Legislature did not contemplate this circumstance. However, any intent to have a defendant like Lewars punished as a PRR is not clear from the plain language of the statute. The plain language requires the opposite, and it does not result in absurdity or an equal protection violation. We are bound by our precedent and the doctrine of separation of powers to apply the statute as written. *See Holly*, 450 So. 2d at 219.

It is so ordered.

CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, and LABARGA, JJ., concur.

ANY MOTION FOR REHEARING OR CLARIFICATION MUST BE FILED WITHIN SEVEN DAYS. A RESPONSE TO THE MOTION FOR REHEARING/CLARIFICATION MAY BE FILED WITHIN FIVE DAYS AFTER THE FILING OF THE MOTION FOR REHEARING/CLARIFICATION. NOT FINAL UNTIL THIS TIME PERIOD EXPIRES TO FILE A REHEARING/CLARIFICATION MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Second District - Case No. 2D15-3471

(Lee County)

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Suzanne Beschard, Bureau Chief, and Lisa Martin, Assistant Attorney General, Tampa, Florida,

for Petitioner

Howard L. Dimmig, II, Public Defender, Matthew Overpeck, and Maureen E. Surber, Assistant Public Defenders, Tenth Judicial Circuit, Bartow, Florida,

for Respondent