DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JEFFREY A. HELMS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-3811

[May 15, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Laura Johnson, Judge; L.T. Case No. 2016CF003443AXXXMB.

Carey Haughwout, Public Defender, and Paul Edward Petillo, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Jeffrey Helms appeals his conviction for robbery with a firearm, for which he was sentenced to life in prison as a prison releasee reoffender. He argues that the trial court erred in allowing the investigating detective to testify that appellant's girlfriend advised the detective of his cell phone number, as this was improper hearsay. He also argues that the trial court erred in sentencing him as a PRR, as he was neither committed to nor released from the Department of Corrections within three years of the robbery. We agree on both issues and reverse. We affirm as to the remaining issues without further discussion.

In February 2016, a man wearing a red button-down shirt, khaki pants, and sunglasses entered a Walgreens in Jupiter at about 8 p.m., and he robbed the store's cashier at gunpoint. The store's surveillance video, admitted at trial, shows the white male wearing a black baseball cap with a drawing of a white face on it. He approaches the female cashier while he is speaking on a cell phone, and she retrieves cigarettes from behind the store's counter. He fumbles in his pocket, and then the cashier hands him

money out of the cash register's drawer. The store's outdoor surveillance footage shows the suspect walking towards the store from outside of the parking lot, and about two minutes later, running out of the store towards the same area.

About three weeks later, the cashier participated in a photo lineup with the investigating detective, and she identified appellant as the robber. The lineup contained six pictures of white males with earrings, but only appellant was wearing a red, collared shirt like the robber. The cashier identified appellant as the perpetrator in the robbery.

Appellant was charged with robbery with a firearm. Prior to trial, he moved to suppress the cashier's identification. Although the trial court found that the lineup was unnecessarily suggestive, it ruled that there was no risk of irreparable misidentification because the cashier was certain of her identification.

In 2017, the case proceeded to jury trial. The cashier testified and explained the incident. She considered herself to have a photographic memory and remembered faces. She described the perpetrator as wearing a red shirt and sunglasses. She stated that her employer instructed employees to concentrate on faces of perpetrators. The cashier also testified regarding the lineup. She identified appellant's picture in the lineup based on her memory, and she did not rely solely on the red shirt to identify him. She testified that he possessed a firearm during the robbery.

During cross-examination, contrary to her earlier testimony, the cashier testified that she had training on how to handle robberies, and the training video instructed her to avoid eye contact with the robber. She saw appellant's eyes only one time when he quickly was turning his head. After the incident, she told the detective that appellant's eyes were blue, but at trial, she said they were bluish green. Also, in her deposition, she testified that she couldn't notice his hair, but right after the robbery, she told the detective that his hair looked dirty blonde. At trial, she stated it was brownish black. Appellant was the only man wearing a red shirt in the photo array, and that fact stuck out in her mind and was "a big deciding factor for" her. In viewing the photo lineup, she looked at the suspects' faces, necks, and shirts to decide, but their faces looked the same. After the lineup, she asked the detective if she got the right guy, and the detective responded in the affirmative.

Appellant's girlfriend also testified at trial. Appellant occasionally stayed overnight at her house in Port St. Lucie. Sometime after the

2

robbery, the girlfriend met with the investigating detective, but she did not remember giving either her or appellant's cell phone number to the detective. She did not remember appellant's phone number.

The investigating detective then testified that she met with appellant's girlfriend a few weeks after the robbery. Regarding the issue on appeal, the detective testified that the girlfriend provided her with appellant's phone number. Based on that information, the detective obtained a search warrant for the phone records that were linked to that number. Defense counsel unsuccessfully objected based on hearsay. At sidebar, counsel argued that the State did not lay the proper foundation to connect the phone number to appellant. He also argued that the girlfriend testified that she did not remember appellant's number, but she did not testify that she gave it to the police. Thus, defense counsel contended that there was no evidence indicating that it was appellant's phone number, and the records linked to the number were not authenticated because the subscriber's name was the name of appellant's mother.

The court found that although appellant's girlfriend either did not remember appellant's number or denied giving it to the detective, pursuant to section 90.614, Florida Statutes (2017), the detective could testify about the statement that was made by the girlfriend to the detective. If the statement was admissible and the phone number was linked to appellant, then the phone records also were admissible. The court admitted the phone records for that number, which included the phone's cell site location information.

Later in trial, before the State's cell phone expert testified about the phone records, defense counsel renewed his objections. He argued that the detective's testimony, i.e., that the girlfriend told the detective appellant's number, was a prior inconsistent statement; however, a prior inconsistent statement admitted under section 90.614 could not be used as substantive evidence if it was not a sworn statement that was given during a prior proceeding. The court overruled the objection, stating that the phone records were self-authenticating.

The cell phone expert then testified that based on the admitted phone records, appellant's cell phone registered off a tower in Jupiter around 7:48 p.m. on the night of the robbery. This was around the time the surveillance video at Walgreen's captured the incident. The expert explained that the cell phone would be in the geographical area of the cell towers sector, which in this case included the location of the Walgreen's. Calls from the phone then were picked up by towers south of Jupiter, showing the phone likely was travelling south, but it eventually moved

3

north, being picked up by a tower in Port St. Lucie. The phone remained in that area until the following afternoon.

Finally, a man who was a neighbor of appellant's family for a few years testified that he saw surveillance photographs from the 2016 robbery. He saw appellant in 2014, and he was certain that appellant was the robber.

The State rested, and the defense unsuccessfully moved for judgment of acquittal. The defense did not present any witnesses. Following closing arguments, the jury asked twice to review the surveillance video of the interaction between the robber and the cashier. It also reviewed the cashier's testimony. After deliberations, the jury found appellant guilty of robbery, concluding that he actually possessed a firearm. The trial court sentenced appellant to life in prison as a PRR. This appeal followed.

Appellant argues that the trial court erred by allowing the investigating detective to testify that the girlfriend gave the detective appellant's phone number, as this was improper hearsay. He asserts that the error was harmful because it allowed the State to introduce evidence of appellant's purported cell phone records. We agree.

We review a trial court's decision on the admissibility of evidence for an abuse of discretion, as limited by the rules of evidence. *Browne v. State*, 132 So. 3d 312, 316 (Fla. 4th DCA 2014). However, whether evidence falls under the statutory definition of hearsay or is admissible under an exception to the hearsay rule are questions of law reviewed de novo. *Id.*

The trial court relied on section 90.614, Florida Statutes (2017), in admitting into evidence the girlfriend's statement to the detective regarding appellant's phone number. The court allowed the State to use the statement to admit the phone records that were linked to that number; thus, the State used the statement as substantive evidence. The court erred because the statement could be used, if the State laid the proper foundation, for only impeachment purposes.

Section 90.614(2), Florida Statutes, provides in part:

> Extrinsic evidence of a prior inconsistent statement by a witness is inadmissible unless the witness is first afforded an opportunity to explain or deny the prior statement and the opposing party is afforded an opportunity to interrogate the witness on it, or the interests of justice otherwise require. **If a witness denies making or does not distinctly admit making the prior inconsistent statement, extrinsic**

4

**evidence of such statement is admissible.**

(emphasis added). If a prior inconsistent statement was made under oath, it may be admissible as substantive evidence. *See* § 90.801(2)(a), Fla. Stat. (2017) (providing that a statement is not hearsay if: the declarant testifies at trial; the declarant is subject to cross-examination regarding the statement; and the statement is, "[i]nconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition"); *see Castillo v. State*, 217 So. 3d 1110, 1114-15 (Fla. 3d DCA 2017) (finding that because the trial witness's prior statement was not made under oath at a prior proceeding, it could not be admitted as substantive evidence, but it could be used for impeachment). Here, the girlfriend's prior statement, in which she gave the detective appellant's phone number, was not given under oath at a prior proceeding. Thus, the statement clearly was hearsay and not admissible as substantive evidence.

The present case is similar to *Jackson v. State*, 961 So. 2d 1104 (Fla. 5th DCA 2007). There, the defendant was convicted of aggravated battery with a deadly weapon for the stabbing of the victim. *Id.* at 1105. On appeal, the defendant challenged the admission of an eyewitness's statement to the police, which differed from that witness's testimony at trial. *Id.* At trial, the witness, who knew both the victim and the defendant, testified that he did not see the defendant stab the victim. *Id.* at 1106. However, over a hearsay objection, an investigator testified that the witness gave a prior statement to the police in which he claimed that he saw the defendant stab the victim. *Id.* The trial court found that the statement was admissible as a prior inconsistent statement, and the State addressed the statement twice during closing argument. *Id.* at 1106-07. The Fifth District held that the prior statement was not admissible as substantive evidence, because it was not given under oath at another proceeding, as required by section 90.801(2)(a), Florida Statutes. *Id.* at 1107. Furthermore, the State could not use the statement to impeach the witness, as the prosecutor did not lay the proper foundation under section 90.614(2), Florida Statutes. *Id.* Because there was little physical evidence, no other eyewitness testimony, and the hearsay was used as substantive evidence that the prosecutor stressed during closing argument, the error was harmful. *Id.*

As in *Jackson*, here, the prior statement of the girlfriend was improperly used as substantive evidence because it was not given under oath at an earlier proceeding. It was substantive, as the State used it to present the cell phone records, which it utilized to determine the appellant's whereabouts on the evening of the robbery.

We cannot find that the above error was harmless beyond a reasonable doubt. *See State v. DiGuilio*, 491 So. 2d 1129, 1138-39 (Fla. 1986) (concluding that under the harmless error test, the State has the burden to show "that there is no reasonable possibility that the error contributed to the conviction," and the appellate court must conclude beyond a reasonable doubt that the error did not affect the verdict). During closing argument, the prosecutor stated that the cell tower location information tied all of the evidence together, showing that appellant's phone was in Jupiter at the time of the robbery and that it then travelled north to Port St. Lucie, where he would stay with his girlfriend, who admitted to having a hat that looked like the one worn by the robber. During rebuttal, the State again stressed how the phone records placed appellant in the Jupiter area at the time of the crime. Furthermore, although the dissent argues that the cashier was 100% certain in her identification of appellant, she was impeached with discrepancies in her description of the perpetrator through various statements given at the time of the robbery, during deposition, and at trial. The dissent also notes that there was testimony that appellant's girlfriend had a dark colored sedan like the one observed in the surveillance video, but the video does not show the kind of car in which the perpetrator left the scene. Additionally, the lineup was admittedly suggestive because appellant was the only person wearing a red shirt, and the red shirt was a big deciding factor for the cashier in her identification. Moreover, a jury could conclude that her certainty of the identification at trial was significantly bolstered by the detective telling her that she had identified the correct person in the photo lineup. Despite this impeaching information, the jury may have given the cashier's identification of appellant more weight because of the cell tower location information, providing a "reasonable possibility that the error contributed to the conviction." *DiGuilio*, 491 So. 2d at 1138.

We thus reverse and remand for a new trial because the court erred in admitting the hearsay evidence of the cell phone number provided by the girlfriend, which was used as substantive evidence to obtain the cell site location information. Although we reverse for a new trial, we also note that based on the supreme court's decision in *State v. Lewars*, 259 So. 3d 793 (Fla. 2018), appellant does not qualify as a PRR under section 775.082(9)(a)1., Florida Statutes (2017).[1] In *Lewars*, our supreme court

---

[1] Section 775.082(9)(a)1.g., Florida Statutes (2017), provides that a defendant who commits a robbery "within 3 years after being released from a state correctional facility operated by the Department of Corrections . . . following incarceration for an offense for which the sentence is punishable by more than 1 year in this state" qualifies as a PRR.

held that "a defendant must have been incarcerated in and physically released from a prison, and not a county facility operated by the local government, within the statutory period" to qualify as a PRR. *Id.* at 800-01. Here, although appellant was sentenced for several felony offenses in 2013, he was sentenced to time served, and he never was physically sent to the DOC. Therefore, he did not qualify for sentencing as a PRR.

*Reversed and remanded for a new trial.*

GROSS, J., concurs.
LEVINE, J., concurs in part and dissents in part with opinion.

LEVINE, J., concurring in part and dissenting in part.

I agree with the majority that appellant should be resentenced since he was not released from a Department of Corrections facility within the last three years. I also agree that we should affirm on all other issues raised by appellant, including the admission of the photographic lineup. Although the trial court determined that the lineup was suggestive, the trial court also found that there was no risk of irreparable misidentification because "the victim had sufficient time and pa[id] sufficient attention to the robber" and the victim "had no doubt, and was positive about the identification." I even agree with the majority that the introduction of the phone records through appellant's girlfriend was error. Where I part company with the majority is on the issue of harmless error. I would affirm all convictions and reverse only for a resentencing.

In this case, the admission of phone records violative of hearsay is not harmful error. The evidence presented by the state at trial included the following:

- The victim was "very confident" that she identified the individual who had robbed her;

- The victim took only thirty seconds at the photo lineup to identify appellant;

- The victim also identified appellant at trial;

- The victim gave a very detailed description of the person who robbed her. During the suppression hearing, she described him as "a tall, athletic man" with "short dirty blond hair" and "blue green eyes." He was "a little tanned" and "dressed very nicely, like he was going to go out." He wore a "long sleeved red maroon

7

shirt," "a silver chain," and had "a long neck and his ears were kind of short." He looked "very muscular like he went to the gym a lot." He wore a cap and "tan long pants, like dress pants";

- The state introduced a surveillance video of the robbery;

- The victim described the robber as wearing a black hat with a white logo, which appeared to the victim as being a kind of hat worn by skateboarders;

- The victim explained that she was "good with faces" regarding her identification of appellant from the line-up;

- Appellant's girlfriend testified that appellant had a black hat with a white logo on it that previously had been at her home;

- When appellant's girlfriend was shown the surveillance video, an officer described her demeanor as being extremely upset and crying;

- Appellant's girlfriend had a dark-colored sedan like the one observed in the surveillance video;

- A former neighbor of appellant, who had lived across the street from appellant for five years, was so certain that appellant was in the surveillance photos disseminated by police that the former neighbor contacted the police.

The state mentioned the phone records in closing argument, but their utility may have been limited. The testimony at the trial put the time of the robbery as 8:00 p.m. at the Walgreens on 575 West Indiantown Road in Jupiter. However, based on calls and text messages sent to nearby cell towers, the phone records placed appellant's alleged cell phone at different areas during the time at question:

7:48 p.m. near Abacoa and Roger Dean Stadium in Jupiter;
7:55 p.m. near Riviera Beach area;
8:01 p.m. near Mangonia Park area;
8:17 p.m. near Mangonia Park area;
8:35 p.m. near Mangonia Park area;
8:40 p.m. near Palm Beach Lakes Boulevard area.

The cell phone activity placed the phone in Port St. Lucie from 10:47 p.m. until 5:00 p.m. the next day.

The trial testimony showed that a cell phone will typically connect to the closest tower, but a cell phone might connect to a tower farther away if the closest tower is overwhelmed with activity and frequency, such as during rush hour traffic. For example, a cell phone might connect to a tower three quarters of a mile away instead of a tower half a mile away.

Although the records placed appellant's phone in the general area at the time of the robbery, it could be argued that the phone showed activity in different areas of the northern part of Palm Beach County at about the same time as the robbery. In fact, appellant's counsel argued in closing that the phone records here were not a "smoking gun," but rather helpful to appellant:

> I just want to take a bit of time to talk about the cell phone records, the State's smoking gun. So at the time of the robbery where all of the witnesses in this case testified 8:00 p.m., right? That's what they testified to. You didn't have anybody from Walgreen's saying any accuracy about any other time or confirming any other time. All of the witnesses, their time was 8:00 p.m.

> 7:55, Singer Island, right? 8:01, Riviera Beach; 8:17, Riviera Beach; 8:35, Riviera Beach. We're in the Riviera Beach area. Let alone all of [defense counsel's] cross examinations that this is kind of approximate.

On the one hand, the phone records placed appellant in the general area of the crime; on the other hand, the phone records tended to exculpate appellant by placing him in cities away from the actual scene of the crime. *See Glendening v. State*, 536 So. 2d 212, 218 (Fla. 1988) (stating that admission of exculpatory testimony "unquestionably did not contribute to the conviction and was harmless beyond a reasonable doubt"); *Chapman v. California*, 386 U.S. 18, 22 (1967) (stating that the purpose of the harmless error rule is to "block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial"). Indeed, "[t]he focus [of the harmless error test] is on the effect of the error on the trier-of-fact." *State v. DiGuilio*, 491 So. 2d 1129, 1139 (Fla. 1986). Since the evidence of the phone records could have either created reasonable doubt or potentially exculpated appellant, it cannot be said "there is a reasonable possibility that the error [in admitting the phone records] affected the verdict." *Id.*

Thus, it is hard to imagine that the introduction of the phone records was not harmless error beyond a reasonable doubt. *See Livingston v. State*, 219 So. 3d 911, 916 (Fla. 2d DCA 2017) (finding admission of hearsay evidence harmless where "[t]he victim gave a detailed in-court description of the person who robbed him, and the victim identified [the defendant] in court as that person with 100% certainty"); *Fields v. State*, 666 So. 2d 554, 554 (Fla. 3d DCA 1995) ("[I]f there was any error in the admission of this evidence, that error was harmless in light of the solid eyewitness identification of the defendant."); *United States v. Simpson*, 188 F.3d 516, 516 (9th Cir. 1999) (finding that any error in admitting testimony over evidentiary objection "would have been harmless because the government presented at trial additional identification evidence, including the eyewitness testimony of the teller who was robbed and bank surveillance photographs and video tape footage of the robbery"); *cf. Jackson v. State*, 598 So. 2d 303, 303 (Fla. 3d DCA 1992) (stating that improper admission of evidence not harmless where "evidence of guilt consisted entirely of non-conclusive eyewitness identification").

Since the phone records did not place appellant at the scene of the robbery at the time of the reported crime, the admission of these records was harmless beyond a reasonable doubt.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***