DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JERMAINE HENDERSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-2188

[April 8, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael Usan, Judge; L.T. Case No. 062022CF003824A88810.

Daniel Eisinger, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, and Nathan Andrew Forrester, Chief Deputy Solicitor General, Tallahassee, and Rachael Kaiman, Senior Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Jermaine Henderson appeals his convictions and life sentences for two counts of armed sexual battery, arguing the admission of certain out-of-court statements through a different witness violated the hearsay rule and his rights under the Sixth Amendment's Confrontation Clause. While we agree the admission of the statements was error, we affirm because the error was harmless beyond a reasonable doubt. We affirm all other issues without discussion.

## Background

The following was established by evidence at trial.

The Victim was a sixteen-year-old student in tenth grade. As she walked home from school, Henderson called out to her, complimented her shoes, and asked if she ran track. The Victim testified that Henderson then led her to the back of his truck, held a box cutter to her ankle and

neck, said, "if you don't run, if you don't scream, you won't get hurt," and sexually battered her vaginally and anally. She testified this was very painful, especially vaginally.

The Victim went home, took a shower, and realized she was bleeding. She collected some blood on a napkin, put it in a plastic bag, and later provided it to law enforcement. When her mother got home, she told her what had happened. They first went to the hospital, and then the Victim went with law enforcement officers to the approximate location of where the battery had occurred. She was then directed to a sexual assault center, which performed a rape kit examination. She testified that the center swabbed her vagina for DNA but she could not remember if they swabbed her anal area.

The Victim's mother testified. Her testimony confirmed the broad details of the Victim's account, including that she underwent a vaginal exam and provided a plastic bag with a bloody tissue to the police.

A police detective confirmed that she took the Victim to the sexual assault center and a rape kit examination was conducted. She testified that officers submitted the rape kit to Lauderhill Property and Evidence, which in turn submitted it to the Broward Sheriff's Office Crime Lab. Henderson did not object to any of this testimony.

The detective further testified that she followed up on the Victim's identification of the crime scene by obtaining a surveillance video from a neighboring house. The video depicts Henderson encountering the Victim, but does not show the criminal acts, as the two walk off camera. The detective used a license plate reader and the timestamps on the video to identify a white pickup truck that passed a nearby intersection near the time of the interaction with the Victim. Further investigation linked Henderson to the truck. The detective compared Henderson's driver's license photo with the surveillance video and, consequently, Henderson was identified as a suspect.

The detective created a photo lineup which another officer presented. The Victim identified Henderson as her assailant in the lineup. Officers arrested Henderson and conducted a recorded interview at the police station. In the interview, Henderson explained that he uses the white truck for work and had the vehicle on the day at issue. At first, he denied knowing what officers were referring to when they mentioned an interaction with a high school student. Confronted with more allegations and evidence, Henderson changed his story and admitted to encountering the Victim, complimenting her shoes, and engaging in sexual conversation.

2

When officers claimed they had DNA evidence, Henderson responded that the Victim had grabbed his penis and then "fingered" herself as he was "peeing" in a bottle "a little erected." Henderson claimed the Victim was "flirty," "forward," grabbed *him*, and asked him to put his finger in her vagina, which he refused. This interrogation was played for the jury.

At trial, the State also presented testimony by a DNA analyst. The analyst testified that she received evidence in this case consisting of vaginal, external vaginal, perianal, buttocks, control, and buccal swabs from the Victim, and buccal swabs from Henderson. She testified that no male DNA was detected in the vaginal and external vaginal swabs, but the perianal swabs provided very strong support for the presence of Henderson's DNA (the sample was 5.88 billion times more likely to be explained by the Victim and Henderson than the Victim and an unknown, unrelated individual), and the buttocks swabs provided moderate support for the presence of Henderson's DNA (the sample was 7,400 times more likely to be explained by the Victim and Henderson than the Victim and an unknown, unrelated individual).

The State further presented testimony by a *Williams*[1] Rule witness— another then-sixteen-year-old girl whom Henderson had approached on the same day. The witness testified that a white pickup truck pulled up to her as she was walking home from school and the driver asked if she ran track. She said no and tried to cross the street, but the car followed her and pulled into a driveway. The man asked if he could show her a foot "trick" to help her run better, and she said "okay," so he took off her left shoe and sock, put her foot on his face, and he caressed her foot. She said she told the man that she needed to go home, but he asked for her number, so she gave him a fake name and number, called a friend while leaving, and made sure the man went the other way. The witness said that she immediately told her mother what happened, and this information was then disclosed to the witness's grandmother. The witness added that a few days later, a photo of the man was on the TV news and her grandmother asked if that was the man with whom she had had the encounter; she recognized him from the news photo and said yes. Her mother called the police and the witness told law enforcement what

---

[1] *Williams v. State*, 110 So. 2d 654 (Fla. 1959). *See also Barnett v. State*, 151 So. 3d 61, 63 (Fla. 4th DCA 2014) ("Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity." (quoting § 90.404(2)(a), Fla. Stat.)).

Henderson did to her.

The State admitted into evidence, and discussed with the witness, the text exchange between the witness and her mother on the day after the encounter, in which the witness asked her mother to pick her up from school, her mother responded "you better not let anyone play with your feet today," the witness said, "that was an accident," and her mother responded she can't pick her up because she has a scheduled medical procedure, but "seriously, call me if you see the truck or van today." The witness identified Henderson in court as the man with whom she had had the subject encounter.

The State additionally presented expert testimony by a nurse practitioner from the sexual assault center ("Nurse"). *Nurse testified that she was not the person who examined the Victim.* She then proceeded to quote extensive portions of the Victim's sexual assault report, prepared by a different, non-testifying examiner, over defense counsel's hearsay objection. *The State did not move the report into evidence.* Asked where the Victim was swabbed and whether she had injuries, Nurse testified that "based on the report," the sexual assault center performed buccal, vaginal, buttocks, and anal swabs on the Victim, and the Victim had a cut on part of her vagina that was bleeding. Nurse further testified that the Victim had no other injuries and that this "is normal" based on her training and experience. Nurse then had the following exchange with defense counsel:

> [Defense counsel]: So without you reading the report that's in front of you, right, do you know the person's age?
>
> [Nurse]: Without reading the report?
>
> [Defense counsel]: Yeah, without reading it.
>
> [Nurse]: Without the report, I would not know the patient.
>
> [Defense counsel]: Okay. Without this report, do you know anything about this case? Like do you have --
>
> [Nurse]: Not to my immediate recollection.
>
> [Defense counsel]: Okay. You don't have an independent knowledge of any of these things that you testified to?
>
> [Nurse]: Only from the report.

4

Henderson elected not to testify. The State mentioned the Victim's vaginal injury in closing and rebuttal to counter defense counsel's argument that no male DNA was found on the vaginal swab. The jury convicted Henderson on both counts of armed sexual assault: one for vaginal penetration or union, the other for anal penetration or union. The trial court imposed two consecutive life sentences. This appeal follows.

## Analysis

A trial court's decision on the admissibility of evidence is reviewed for an abuse of discretion, as limited by the rules of evidence. *Helms v. State*, 271 So. 3d 1030, 1033 (Fla. 4th DCA 2019). "However, whether evidence falls under the statutory definition of hearsay or is admissible under an exception to the hearsay rule are questions of law reviewed de novo." *Id.*

### *Much of Nurse's Testimony was Inadmissible Hearsay*

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(c), Fla. Stat. (2023) "Except as provided by statute, hearsay evidence is inadmissible." § 90.802, Fla. Stat. (2023).

> Written reports are statements within the meaning of the hearsay rule. A party may not evade the hearsay rules by having the witness summarize the statement rather than relay the statement verbatim. Although an expert may rely on hearsay in reaching the expert's opinion, an expert's testimony may not merely be used as a conduit for the introduction of the otherwise inadmissible evidence.

*Tolbert v. State*, 114 So. 3d 291, 293–94 (Fla. 4th DCA 2013) (citations and quotation marks omitted), *rev. denied*, 122 So. 3d 870 (Fla. 2013). In *Tolbert*, we held that a witness's testimony was inadmissible hearsay where she testified that she lacked personal knowledge of the underlying testing and was instead relying on and summarizing another declarant's report. *Id.* at 294. However, we determined the error in that case was harmless because the hearsay testimony did not directly implicate the defendant (it only explained why the witness re-tested the victim's DNA sample), while other independently admissible parts of the witness's testimony were more important. *Id.* at 295.

Similarly, here, Nurse's recounting of the sexual assault report was inadmissible hearsay. Virtually every time Nurse was asked a question, she began by stating that she was reading her answer from the report.

Indeed, she agreed with defense counsel that she had no "independent knowledge of any of these things" and would not know anything about this patient or case without referencing the report. As Nurse was acting as a mere conduit for the hearsay statements in the report, her testimony recounting the report's contents was inadmissible hearsay.

Specifically, the pieces of evidence that should not have been admitted were: (I) the sexual assault report's clinical description of the Victim's vaginal injury and bleeding; and (II) the report's description of which of the Victim's body parts were swabbed. Nurse read these observations of physical phenomena verbatim from the report. In contrast, her statements about the clinic's ordinary procedures and her own expert opinions (such as whether injuries are typical and how frequently they are seen) were admissible.

### *The Business Records and Medical Diagnosis Exceptions do not Apply*

On appeal, the State argues the testimony falls under the hearsay exceptions for certified business records or statements made by a person seeking medical treatment or diagnosis. *See* § 90.803(4), (6), Fla. Stat. (2023). These arguments lack merit.

"While the business records exception to the hearsay rule allows the admission of a memorandum, report, record, or data compilation, it does not authorize hearsay testimony concerning the contents of business records which have not been admitted into evidence." *Helton v. Bank of Am., N.A.*, 187 So. 3d 245, 247 (Fla. 5th DCA 2016) (quoting *Thompson v. State*, 705 So. 2d 1046, 1048 (Fla. 4th DCA 1998)). A witness's testimony regarding the contents of a business record not in evidence is inadmissible hearsay. *Id.* Here, because the sexual assault report was never admitted into evidence, the State cannot rely on the business records exception as a basis for the report's admissibility. *See also Cardona v. Nationstar Mortg., LLC*, 174 So. 3d 491, 493 (Fla. 4th DCA 2015) ("Because the business records were not introduced into evidence, the trial court erred by overruling the homeowners' hearsay objection.").

The medical treatment or diagnosis exception does not apply because the sexual assault report in question consists of statements by the *medical examiner*, not the *patient*. *See Harris v. State*, 37 So. 3d 285, 287 (Fla. 2d DCA 2010) ("[Section 90.803(4)] applies when a doctor, or perhaps a nurse or paramedic, explains what a victim of a crime told them when seeking treatment. It does not apply to allow the victim to state in court what the doctor explained to the victim about the reason or the necessity for

treatment." (citation omitted)), *rev. denied*, 77 So. 3d 1254 (Fla. 2011).

### *The Error was Harmless*

Notwithstanding the trial court's error in admitting Nurse's hearsay statements, the convictions should be affirmed as the error, in the context of this case, was *harmless*. Error is harmless if there is no reasonable possibility the error affected the verdict. *Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1255-57 (Fla. 2014). "Application of the test requires not only a close examination of the permissible evidence on which the jury could have legitimately relied, but an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict." *State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986).

"The prosecution must prove four elements beyond a reasonable doubt for an individual to be convicted [of armed sexual battery upon a person twelve years of age or older]: (i) sexual battery, (ii) upon a person twelve years of age or older, (iii) without that person's consent, and (iv) with the use or threatened use of a deadly weapon, or actual physical force likely to cause serious personal injury." *United States v. Deshazior*, 882 F. 3d 1352, 1356–57 (11th Cir. 2018) (citing § 794.011(3), Fla. Stat.). "Sexual battery" at the time of the charged conduct was defined as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object[.]" § 794.011(1)(h), Fla. Stat. (2021).

Here, the jury could have legitimately relied on a substantial amount of properly admitted evidence in convicting Henderson of armed sexual battery. Foremost, of course, is the Victim's testimony. She testified about the way Henderson had approached her, her visits to the hospital, crime scene, and sexual assault center, and the battery itself. Her account of Henderson's unusual interest in her shoes and feet and whether she ran track matched perfectly with the *Williams* Rule witness's testimony, which was itself corroborated by contemporaneous texts with the witness's mother. The two girls' testimony about Henderson's predation was compelling, highly consistent evidence of his modus operandi and lewd motives.

The jury also listened to Henderson's interview with police, in which he first denies having anything to do with a teenage girl, and then ultimately admits to having encountered the Victim, engaging in sexual conversation with her, and even to exposing his penis in the Victim's presence. Add in the DNA evidence showing Henderson's DNA in the Victim's perianal and buttocks swabs, and no reasonable doubt could arise. Notably, defense

counsel did not even mention the anal DNA evidence in closing argument, presumably because no credible argument could be made against that highly compelling scientific evidence.

In contrast, the two pieces of evidence that should have been excluded were not central to the case. The statements about which of the Victim's body parts were swabbed were entirely cumulative to the DNA analyst's unobjected-to testimony listing the swabs which she had analyzed. The description of the Victim's bleeding at the sexual assault center was also essentially cumulative to her own testimony that she was bleeding in the shower, collected the blood, and then found the vaginal swab painful. *See Jakubowski v. State,* 286 So. 3d 955, 957 (Fla. 1st DCA 2019) ("Florida appellate courts have held the admission of statements that do not qualify as statements for medical diagnosis or treatment to be harmless, if the victim testifies to the same information." (collecting cases)).

The only inadmissible evidence that was not cumulative to properly admitted evidence was the sexual assault report's clinical description of the Victim's vaginal injury. The State emphasized this evidence in closing to anticipate, and then in rebuttal to rebut, defense counsel's argument that no male DNA was found on the vaginal swab. Nonetheless, this was far from being a focus of the case. The State's case overwhelmingly focused on the Victim's testimony, the way it was corroborated by the other witnesses' testimony, and the DNA evidence showing Henderson's DNA in her perianal and buttocks swabs. Further, we can infer from the jury's guilty verdict on the "armed" element, which was corroborated by nothing beyond the Victim's testimony, that the jury resolved all credibility questions in the Victim's favor, even as to the portions of her testimony that were not corroborated by other evidence.

**Conclusion**

We see no reasonable possibility that a jury confronted with the Victim's account of her vaginal pain during the battery, her account of bleeding in the shower and feeling pain during the vaginal swabs, the corroborating account by her mother, the chillingly similar and contemporaneously corroborated testimony by the *Williams* Rule witness, Henderson's incredible and incriminating half-confession, and the uncontroverted evidence of Henderson's DNA in the Victim's perianal and buttocks swabs, would reach a different verdict because it lacked the clinical description of the vaginal injury which the Victim separately testified to enduring. No logical reason explains why this one omission would change the verdict. Accordingly, we affirm.

*Affirmed.*

KLINGENSMITH and SHEPHERD, JJ., concur.

* * *

**Not final until disposition of timely-filed motion for rehearing.**